Wallace, sup't, vs. Cannon.

CAMPBELL WALLACE, Superintendent of the Western and Atlantic Railroad, plaintiff in error, vs. MARY E. CANNON, defendant in error.

(Brown, C. J., having once argued this cause in the Supreme Court, declined presiding.

When two or more parties are engaged in the same illegal transaction, in violation of the supreme law of the land, and one of them is injured by the carelessness, or negligence of the other, the Court will not lend its assistance in favor of either party to recover damages. The maxim of the law in all such cases is, *"In pari delicto potior est conditio defendentis et possidentis."*

Motion for new trial. Charge of the Court. By Judge COLLIER. Fulton Superior Court. October Term, 1867.

Those curious about the history of this case, are referred to *Cannon vs. Rowland, Sup. W. & A. R. R.*, 34th *Ga. R.* 422 *S. C.* 35th *Ga. R.*, 105.

· The new superintendent was made a party, Rowland having died. It was an action by Mary E. Cannon, widow of Sylvester Cannon, an employee of the Western and Atlantic Railroad, because of his death by the alleged carelessness of the employees of the said railroad, on the 6th of July, 1862, while he was acting as engineer, on a train from Atlanta, Georgia, to' Chattanooga, Tennessee. Besides the general issue, the defendant plead that, at the time of the killing, there was no legal government of, or in, the State of Georgia, and no legal superintendent, agents or employees of the Western and Atlantic Railroad, and that said collision and killing did not take place by reason of any fault, negligence or misconduct of any lawful officer, agent or employee of the Western and Atlantic Railroad; that at said time, the government of the State of Georgia, and superintendence, control and management of the Western and Atlantic Railroad were in the hands of persons, inhabitants of Georgia, then engaged in insurrection against the Government of the United States; that, at said time, said Sylvester Cannon was, by acting and serving as engineer on said railroad, unlawfully aiding and

abetting the enemies of the United States, because the persons with whom and under whom he was so acting and running, were then engaged in acts of hostility, and were in insurrection against the United States, and because said Cannon was, as such engineer, assisting in the transportation of troops, knowingly and willingly, to wage war against the United States; that said Sylvester Cannon was, at that time, an inhabitant of the State of Georgia, and was in insurrection against the United States; that, at that time, Georgia was a State in which the laws of the United States were opposed, and their execution obstructed by insurgents and rebels against the United States, too powerful to be suppressed by the ordinary course of judicial proceedings; that, by acting then, as such engineer, and assisting in conveying and transporting insurrectionary troops to fight against the forces of the United States, he was resisting and interfering with the unrestrained use by the Government of the United States of said railroad, contrary to the Act of Congress, approved 31st of January, 1862, entitled, "An Act to authorize the President of the United States in certain cases to take possession of railroads and telegraph lines, and for other purposes;" that, at said time, Cannon owed allegiance to the United States, and was engaged in levying war against the United States, and in giving the enemies thereof aid and comfort; that Cannon, at said time, was negligent and actively in fault, and did, by his misconduct, contribute to his own destruction; and lastly, that any debt or liability that may have been incurred by reason of plaintiff's allegations, was, in fact, incurred while carrying on the late war of secession against the United States of America, and in aiding and abetting and promoting said war. It was shewn that Cannon was killed by a collision on said road, on Sunday, the 6th of July, 1862; that he was at the time acting as engineer of the train from Atlanta to Chattanooga, freighted with passengers, most of whom were Confederate soldiers, who had no guns but two or three cannon, besides horses and harness, and wore the Confederate uniform; two of the cars were passenger cars, twenty-one other cars carried the soldiers. The train was the regular mail train, which

carried many letters and packages and military orders to the Confederate soldiers and Generals; that the down train which collided with his, was a freight train, which had been from Atlanta to Chattanooga, freighted with Confederate soldiers, and was then returning empty to Atlanta; that he had been ordered out that day by Col. Camden, the agent of the road at Chattanooga; that Cannon's train had been delayed because a certain turnout was too short to allow the passage of all trains that day.; that this turnout had been sufficient before the war, but that the large amount of freight and soldiers that the road had to carry for the Confederate Government, so increased the number and length of the trains, that said turnout was then too short, and that Cannon was aware of this difficulty in passing; that the road was then in the habit of carrying Confederate soldiers, and there were so many of them, and so much freight for the Confederate Government, that much confusion was produced, yet, by care and observance of the rules, the trains could have been run without collision. On the question of negligence, it was shewn that Cannon was upon the road that day, by order of the Master Machinist, that though behind his schedule time, he had been put back by the order of others, or the action of others, getting in his way; that, being Sunday, it was unlawful for the freight train to be running, and that besides, he had passed all the regular down trains, and, by a rule of the road, it was provided that notice of any irregular train should be given by telegraph, and no such notice was given to Cannon's train. There was also evidence as to the rules, as to speed of trains, and as to the speed of Cannon's train at the time, and as to the age, character and qualifications of Cannon, to show the *quantum* of damages due to his wife by reason of this loss.

The Court charged the jury, among other things, that it was necessary for plaintiff to show that said Cannon was killed by the running of the cars of the Western and Atlantic Railroad, and that without fault or negligence on his part, he being an employee of said road and engaged thereon, and as such, at the time; that the transportation of Confederate troops over the Western and Atlantic Railroad in 1862, for

the purpose of making war upon the government or authorities of the United States, was contrary to the public policy and laws of the United States, and therefore illegal, and if Cannon was voluntarily engaged in the performance of acts in violation of the Constitution and laws of the United States, when he was killed, and from that cause solely, or from the fault or negligence of said Cannon, at the time he lost his life, plaintiff could not recover; that if the killing resulted solely from the fault or negligence of defendant, or its employees, then plaintiff could recover.

The verdict was for $5,000 00 in behalf of the plaintiff.

The defendant moved for a new trial, upon the grounds that the verdict was contrary to the evidence, etc., and because of the use of the "solely," in said charge, in the two places where it occurs.

The Court refused a new trial, and this is assigned as error, on the grounds aforesaid.

P. L. MYNATT, L. E. BLECKLEY, for plaintiff in error. Constitution of U. S., art. 3, sec. 3, and Act of Congress of April 30th, 1790, sec. 1st and 2d, as to treason; Act of Congress, 31st January, 1862, 2 Brightly's Dig., 192, Mrs. Alexander's Cotton Case, 2 Wallace, show the policy of the U. S. This unlawful business prevents the recovery. Hilliard on Torts, vol. 1, 161–162. Gregg & Wyman, 4 Cush. R., 322. Bosworth vs. Swansey, 10 Metcalf R., 363. Foster vs. Thurston, 11th Cush. R., 322. Lord vs. Chadburne, 42 Maine R., 429. Saily vs. Smith, 11 John. R., 500. DeWentz vs. Hendricks, 2 Bing. R., 314. Holman vs. Johnson, 1 Cowper, 341. Peters' C. C. R., 410, 3d Washington's C. C. R., 276. The Court should not have used "solely," Davis vs. Garrett, 6 Bing., 716. (19 E. C. L. R., 215.) This case is covered by the Repudiating Ordinance of 1865, see Journal, 234. It is a debt by fair construction. *S. W. R. R. Co. vs. Paulk,* 24 *Ga. R.* 356. 2 *Kelly,* 81, 85, 88. *Ib.,* 252, 255–6, 271. 3 *Kelly,* 380, 493. 5th *Ga. R.,* 368–9. 6 *Ga. R.* 103. 9th *Ga. R.,* 515. 15th *Ga. R.,* 4. 34th *Ga.,* 405. Lastly, they contended that the 3d section of the Act of 1856 is uncon-

stitutional. *Prothro et al. vs. Orr et al.*, 12th *Ga. R.* 36. *Inf'r Court vs. Hunt et al.*, 29th *Ga.*, 158.

ROBERT BAUGH, S. B. HOYT, for defendant in error, furnished no brief to the Reporter.

WARNER, J.

This was an action brought by the widow of Sylvester Cannon, an employee of the Western and Atlantic Railroad, against that road, to recover damages for killing her husband, by the negligence of another employee of the road, under the provisions of the Code. On the trial of the case in the Court below, it was insisted that the plaintiff was not entitled to recover, because her husband, at the time he was killed, was *voluntarily* engaged in the *unlawful* act of transporting Confederate soldiers and munitions of war, for the purpose of making war against the Government of the United States. If the husband of the plaintiff, at the time he was killed, and the other employees of the company, at the time of the injury, were *voluntarily* engaged in transporting Confederate soldiers and munitions of war upon the road, for the purpose of making war upon the Government of the United States, such voluntary engagement, on their part, was an *illegal* act, in violation of the Constitution of the United States, the supreme law of the land. The Court below charged the jury in relation to this point in the case, "If you shall believe from the evidence in this case, that the deceased was voluntarily engaged in the performance of acts in violation of the Constitution of the United States when he was killed, and from that cause *solely*, or from the fault or negligence of the said Sylvester at the time he lost his life, then the plaintiff is not entitled to recover. If the killing resulted *solely* from the fault or negligence of the defendant, or of an employee of the defendant, then the plaintiff is entitled to recover." This charge of the Court is excepted to, and assigned for error here.

The charge of the Court, so far as the same relates to the illegal employment of Cannon, and the other employees

of the road, at the time of the injury, in view of the evidence in the record, was error. The question involved in that branch of the case was, whether the parties were *voluntarily* engaged, at the time of the injury, in an *unlawful* transaction, in violation of the Constitution and laws of the United States; that was a *distinct ground* of defence against the plaintiff's right to recover. The injury was caused by the collision of the two trains running upon the road. The evidence is, that Cannon's train was freighted with Confederate soldiers, two or three cannon, besides horses and harness, etc. Murphy testifies, "that in 1862, the road was in the habit of carrying Confederate soldiers; there were so many soldiers, and so much freight of the Confederate Government, that a great deal of confusion was produced." Wing, the conductor on the down train, testifies, "that he had been carrying a load of Confederate soldiers to Chattanooga, and was returning with an *empty train;* that he was ordered out by Col. Camden, the agent of the road at Chattanooga." In view of the evidence contained in the record, as to the illegal employment of the parties at the time the alleged injury occurred, the Court, in our judgment, should have charged the jury, that if they believed, from the evidence, that, at the time Cannon was killed by the collision of the railroad trains, the railroad company and the employees of that company, (including Cannon, as well as the other employees, whose negligence caused the injury,) were *voluntarily* engaged in the transportation of Confederate soldiers on the road for the purpose of making war upon the Government of the United States, then the plaintiff is not entitled to recover.

There was much said, on the argument of the case, about the down freight-train running on Sunday, in violation of the statute of this State. We do not recognize the doctrine, that one offender against the law, can *set-off* against the plaintiff that he, too, is a public offender, in another *distinct transaction.* See Mahony vs. Cook, 26 Pennsylvania R., 342; The Philadelphia, Washington and Baltimore Railroad Company vs. The Philadelphia Steam Tow-boat Company, 23 Howard's U. S. R., 209. To bring the parties with-

in the rule of the law applicable to such cases, they must *both* have been engaged in *the same illegal* transaction; it is such cases only, that the maxim of the law, "*In pari delicto potior est conditio defendentis et possidentis*" applies.  In all such cases, the rule of the law is, to leave the parties where it finds them, giving no relief, and no countenance to claims of that character; not for the benefit of the defendant, but upon grounds of public policy.  Let the judgment of the Court below be reversed.