NANCY MARTIN, plaintiff in error, *vs.* CAMPBELL WALLACE, Superintendent Western & Atlantic Railroad, defendant in error.

The Western and Atlantic Railroad was engaged in the service of the Confederate Government, by carrying troops who were in the service of said Government for compensation paid by said Government, to the battle-field of Chickamauga. The husband of the plaintiff was captain of a company in said service, and was carrying his company on the cars of said road, under the orders of his superior officer, to engage in the battle of Chickamauga. While both the road and the captain were thus engaged in the common cause of aiding the Confedfederate Government to prosecute the war against the United States, (the captain's fare on the road being paid by the Confederate Government,) a collision occurred upon the road, and the captain was killed: *Held*, that the Courts must now adjudge such mutual employment an illegal transaction, in violation of the supreme law of the land, and that they will not lend their aid to either party to recover damages for any injuries received by the carelessness or negligence of the other, while they were engaged together in the service of the Confederate Government, aiding it in the prosecution of hostilities against the Government of the United States.

Railroads. Liability for killing Confederate States Soldier. Decided by Judge POPE. Fulton Superior Court. November Term, 1869.

Nancy Martin, in 1866, sued Wallace, as Superintendent of the Western and Atlantic Railroad, for killing her husband. She averred that he was killed by the careless running of the trains of said road on the 14th of September, 1863, and, in one count, that he was a passenger on said road

Martin *vs.* Wallace, sup't.

at the time, having paid his fare, and in another count, that he was a soldier and officer of the Confederate States army, going on defendant's train by order of his superior officer and that his fare was paid by the Confederate States.   The defendant plead the general issue, that Martin was, at the time a soldier in the army of the Confederate States, aiding and abetting the enemies of the United States, and then was in armed hostility to the United States, resisting its lawful authority, and going to the point of conflict between said armies to aid the enemies of the United States, and that at that time the legal government of Georgia was displaced, and the employees of said railroad were not the employees of the State, and the State was not liable for their misconduct in managing said road, and that each and all of said employees were then in rebellion and insurrection against the Government of the United States.

The killing on said day, by a collision, produced by the carelessness and misconduct of said employees, the industrious habits of Martin, and what he would make *per annum* if alive, as well as that his wife was dependent upon him for a support, were proved.   The witness who testified to those facts also testified that Martin was at the time captain of a Tennessee regiment of infantry in the said Confederate army, taking his command to the battle-field of Chickamauga, under orders from his commanding officer, and the witness supposed that he intended engaging in said battle.

The plaintiff having closed, defendant's counsel moved for a non-suit, upon the ground that Martin's wife could not recover for the death of her husband, he having been killed while going to fight against the armies of the United States. The non-suit was granted, and that is assigned as error.

BAUGH & GARLINGTON, for plaintiff in error.

L. E. BLECKLEY, P. L. MYNATT, for defendant in error.

BROWN, C. J.,

The declaration in this case distinctly alleges that the deceased husband of the plaintiff "was a soldier and officer in the army of the Confederate States, owing service, fidelity and allegiance to the same;" that he was ordered by his superior officer to enter the cars of the Western and Atlantic Railroad, and proceed to a point on that road; that the Superintendent of the road was carrying soldiers on said road for hire and reward, paid by the authorities of said Confederate States, and that, therefore, and in consideration of the hire and reward so paid and agreed upon, and transportation furnished and paid for by said Confederate States Government to said defendant, said Superintendent undertook and promised to carry and convey the said husband of the plaintiff from Atlanta to a point on said road, etc., and that he was killed on the way by the negligence of the officers of the road. The evidence contained in the bill of exceptions discloses the fact that the deceased was Captain of Company H., 50th Regiment, Tennessee Infantry, and that he was on board the cars with his company, on his way to the battle-field of Chickamauga, as witness, who was a member of the company, thinks, to engage in the battle.

Under the state of facts disclosed by plaintiff's declaration, and his own witness, we are unable to draw a distinction in principle between this case and the case of *Cannon vs. Wallace, Superintendent, 38th Georgia,* 199. In that case the road was engaged in carrying troops for the Confederate Government, and Cannon, who was an employee of the road voluntarily engaged in aiding it to carry the troops, was killed by the carelessness of another employee of the road, and it was held that his widow could not recover, because both Cannon and the road were engaged in the same illegal transaction in violation of the supreme law of the land—that is, they were both, at the time of his death, aiding the Confederate Government to conduct hostilities against the Government of the United States by transporting troops in its service.

In the case now under consideration, Captain Martin was

not an employee of the road, but he was in command of a company of Confederate troops, on his way to engage in the battle of Chickamauga, and the road was transporting him to said battle-field for hire, *paid by the Confederate Government.* Both he and the road were in the service of the Confederate Government at the time of his death, just as both were in the service of that government at the time of Cannon's death. The fact that one was an employee of the road and the other was an officer of the Confederacy can make no difference, as both were aiding the Confederacy in common with the road, and upon the cars of the road when they were killed. The one gave aid by helping to run the cars with troops on board, the other aided by passing upon the road under arms as an officer of the Confederacy, while his fare was paid by it to the road. In each case the road was in the service of the Confederate Government, engaged in the transportation of troops when the collision occurred, and in each the deceased was on board the train, which was engaged in the transportation of troops, and was himself in the service of the Confederacy—the one as a captain under arms, the other as an employee of the road, transporting those who were under arms. The object was a common one in both cases, and the road, and all who were on board, were actively aiding to conduct hostilities against the United States. While so engaged they were *in pari delicto*, and the Courts, who, as well as all other departments of the Government, are bound to accept the situation and administer the law as they find it, cannot lend their aid to assist either in the case of injury sustained by the negligence or the misconduct of the other.

Admit all that was claimed in the eloquent appeal of the able counsel who concluded the argument for the plaintiff in error (General Garlington) as to the *de facto* character of the Confederate Government, and its power over its subjects, who were obliged to yield it their allegiance and support, and the same result must still follow. The Confederacy failed. The Government of the United States triumphed, and wielding the power of a conqueror, solemnly enacted that the attempt

to set up an independent government was rebellion, and that all who voluntarily aided and abetted were rebels. The present State governments were organized under the dictation of the conqueror, upon this theory. And although the President of the United States, by his proclamation, may have granted pardon and amnesty to all, this does not authorize the Courts to give damages to one of two parties who were engaged together in the illegal enterprise for injuries received during its joint prosecution. If the enterprise were illegal at the time, and those engaged in it were guilty of a violation of the penal laws of the United States, which our failure compels us to admit, the pardon of the President, which wipes out the offence against the Government, can not give a right of action to one against the other for injuries received in the joint commission of the illegal act or crime which rendered the pardon necessary to relieve the parties from the punishment prescribed by law for their joint offence.

We would only remark, in conclusion, that the plaintiff in this action can take no such benefit under the Conscript Act, as was claimed by the counsel. He was a captain commanding a company. He must have accepted that position voluntarily. Persons were not compelled by the Conscript Act, tyrannical as it was, to fill the *offices* in the army. *Volunteers* were found ready to accept them.

Judgment affirmed.