# EBBA KIRSCHBAUM v. H. C. LOWREY.[1]

March 16, 1928.

No. 26,428.

**Physician's opinion as to effect of an assault was inadmissible because of lack of foundation.**

1. It is error for want of foundation to permit a doctor to give an opinion as to the eventual effect of an assault upon the plaintiff without showing that he heard the testimony describing the assault or without stating assumed facts to characterize the assault, there being nothing upon the record to show the doctor's conception of the character of the assault nor of its immediate effect.

**Instruction was erroneous because it indicated "additional damages" were recoverable.**

2. Plaintiff, seeking damages for an assault, claimed that a latent and dormant stage of tuberculosis was thereby incited and made active. *Held* that an instruction indicating permission to find "additional damages" over and above the usual compensatory damages was erroneous.

**Damages not recoverable upon an invited assault.**

3. A person cannot recover damages caused by an invited assault which does not exceed the bounds of the invitation.

**Question raised rested on speculation.**

4. Upon the facts stated in the opinion, the question whether plaintiff was suffering with a latent tubercular condition, which was caused to flare up by reason of an assault upon her, rested in conjecture and speculation.

Assault and Battery, 5 C. J. p. 629 n. 27; p. 692 n. 66.
Damages, 17 C. J. p. 753 n. 46.
Evidence, 22 C. J. p. 640 n. 35.

See note in 14 L.R.A.(N.S.) 908; 2 R. C. L. 558.

Action in the district court for Blue Earth county for assault. There was a verdict for plaintiff, and defendant appealed from an

[1] Reported in 218 N. W. 461.

order, Harry. A. Johnson, J. denying his motion for a new trial. Reversed.

*Evan Hughes* and *E. Raymond Hughes,* for appellant.

*John E. Regan* and *B. D. Grogan,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying his motion for a new trial.

The facts are stated in 165 Minn. 233, 206 N. W. 171.

1. It is the claim of plaintiff that she was afflicted with a latent condition of tuberculosis which was made to "flare up" because of the nervous excitement incident to the assault. Plaintiff's counsel put to their medical expert this question:

"Would an experience such as the plaintiff had in this case, being subjected to an assault and being thrown into a hysterical condition and suffering an injury to the coccyx, would that tend to lower the resistant power so as to cause the tuberculosis condition to flare up? * * * In your opinion would that cause this condition?"

Over the objection that no proper foundation had been laid, the witness answered, "Yes, it could." The record does not disclose the necessary foundation. It does not appear that the witness had heard plaintiff describe from the witness stand the alleged assault, nor did counsel include in the inquiry, as assumed facts, the elements which characterized the "experience," the "assault," or the "hysterical condition" to which plaintiff claimed she had been subjected. We do not know what conception the doctor had as to the "experience," the "assault," or the "hysterical condition." The objection should have been sustained for want of foundation.

2. The court very properly instructed the jury that, if defendant assaulted the plaintiff, she was entitled to recover such measure of damages as would fairly and justly compensate her for the consequences or effect of such assault. The court might well have said that in doing this the jury could take into consideration the fact, if it were a fact, that the assault incited or caused a latent condition of tuberculosis to "flare up" and become active. But what the learned trial court did say was this:

"If you find that the plaintiff had tuberculosis in a latent or inactive stage at the time the defendant committed the alleged assault on the plaintiff, and such assault aggravated such disease and caused it to flare up again, then those matters can be taken into consideration by the jury in determining the amount of any additional damages."

This language is susceptible to the construction by the jury that it could assess "additional damages" above that contemplated by the rule which had been stated, a meaning not intended by the learned trial court.

3. In considering the sufficiency of the evidence to sustain the verdict, we conclude that plaintiff cannot recover for the alleged assault of January 23. Plaintiff invited defendant to come to her home on that evening and volunteered the false information that her husband would not then be at home. This invitation, given under the circumstances of the case, carried with it the insinuative suggestion that his advances would not be offensive. Plaintiff knew this and disclosed his coming to her husband, who acquiesced therein. They permitted defendant to come into the home, but the husband's presence was concealed. Plaintiff then told defendant that her husband would not return home until after midnight. Plaintiff testified that a few minutes later defendant "put his hands up around my shoulders, and I said 'don't touch me' * * * my husband stepped out of the other room and grabbed him." Subsequent events show conduct necessarily resulting from previous plans. This invited conduct, to the extent that it may be considered an assault, not having exceeded the bounds of the invitation, cannot be made the basis for the recovery of damages and, in submitting the case to the jury, plaintiff's right to recover should have been limited to the first assault. Indeed the conduct of plaintiff and her husband on this occasion so characterizes their claim that a verdict for a large amount, based on the assault of November 1, cannot be permitted to stand.

4. Plaintiff claims to have been assaulted on November 1. Perhaps she was. Her clothing or appearance did not disclose it to her

husband, whom she saw soon after. On February 2 she consulted Dr. Denman, who found her to be hysterical. He saw her at other times, including April 17, 23, 26 and May 7. On April 17 the doctor found a temperature of 99.6; on May 7 he concluded that she had pulmonary tuberculosis. He said he could not tell when this condition had begun; that the acute condition which he found on April 17, indicating an early stage of the disease, had existed for two or three weeks at that time. When asked his opinion as to whether plaintiff had a latent tubercular condition at the time of the injury, he said, according to the teachings of the best men in regard to tuberculosis infection, she did have, and when asked, as above indicated, as to the assault causing it to "flare up," he said it could have. How much of the excitement may be attributable to the second assault and plaintiff's conduct in connection therewith does not appear. It would seem however that the nervous tension in connection with the planning, waiting and execution of the scheme, which carried with it a prospective, substantial, compulsory pecuniary gain, was equally as much of a strain as that incident to the first assault occurring 80 days earlier.

It was subsequent to the so-called second assault that she required medical assistance, when it was found necessary to administer to her hysterical condition. In the 80 days following the first assault she did not require a doctor. Indeed such help was not sought until after this action was commenced in the last days of January. How the consequences of her own recent conduct could be eliminated or separated to permit a finding that the first assault was the proximate cause of the "flare up" is not made to appear. Whether this is possible we do not know. So far no effort has been made to show this. Upon the present record it was error to submit this element to the jury because it involved a matter of conjecture and speculation.

Reversed.