HELEN J. TRUE, SPECIAL ADMINISTRATRIX OF THE ESTATE OF ILENE EAGEN, v. RAYMOND OLDER AND ANOTHER.[1]

November 19, 1948.

No. 34,682.

*Leo J. Seifert,* for appellant.

*Paul C. Cooper, Morse & Frundt,* and *Eldon J. Spencer,* for respondent.

KNUTSON, JUSTICE.

This is an action for death by wrongful act, brought for the benefit of the seven-year-old daughter of Ilene Eagen, the deceased. Recovery is sought for an abortion committed on the person of Ilene and for neglect after the operation, as a consequence of which her death occurred. Demurrers were interposed by both defendants on the ground that the amended complaint failed to state a cause of action. They were overruled, and the question involved was certified as important and doubtful. Defendant Older alone has appealed. He will hereinafter be referred to as the defendant.

M. S. A. 573.02, the death-by-wrongful-act statute, provides:

"When death is caused by the wrongful act or omission of any person or corporation, the personal representative of the decedent may maintain an action therefor if he might have maintained an action, had he lived, for an injury caused by the same act or omission."

Defendant contends that plaintiff cannot recover, first, because her decedent was guilty of fornication from which pregnancy resulted, making desirable the attempted abortion, for, says defendant:

"Her pregnancy, according to the complaint, was caused by these illicit sexual relations. There could have been no abortion had there not been a pregnancy. There could be no pregnancy without these illicit sexual relations. One depends upon the other."

With these contentions we cannot agree. It is true that without a pregnancy there could have been no abortion, but it does not follow that because there was a pregnancy caused by illicit relations there must be an abortion. Fornication and abortion are separate acts. Consent or voluntary submission to fornication is no consent to abor-

tion. If after pregnancy defendant had induced decedent to become intoxicated or had given her drugs so as to render her unconscious and while she remained in that state of unconsciousness he had performed an abortion or procured someone else to do so, could anyone say that she was barred from recovery because the pregnancy was the result of illicit relations? We think not. Abortion would be equally wrong and equally unlawful whether the pregnancy was the result of licit or illicit relations.

Secondly, defendant claims that plaintiff is barred because the complaint does not state that decedent did not submit to the abortion, and, he argues, consent is not synonymous with submission. Therefore, defendant argues, an allegation that she did not "freely and voluntarily consent" to the abortion does not mean that she did not submit to it. This contention is untenable for two reasons. Justification is a matter of defense and need not be negatived in the complaint. 1 C. J., Abortion, § 123; Miller v. Bayer, 94 Wis. 123, 127, 68 N. W. 869, 871, where the Wisconsin court said:

"* * * If the act was justifiable, clearly, in an action for damages, the facts in that regard are a matter of defense; hence not necessary to be alleged in the complaint."

We believe that the same rule applies where defendant claims the unlawful participation of plaintiff (or plaintiff's decedent in this case) as a bar to recovery.

■ In the second place, in order to charge plaintiff's decedent with wrongful conduct that would bar recovery on any theory, it must be shown that submission to the abortion was voluntary. If defendant forced plaintiff's decedent to submit to abortion by threats of such a serious nature as to destroy her own volition, there would be no consent at all and consequently no wrong on her part. Restatement, Torts, § 58. If her mental condition was so affected that she was prevented from giving her voluntary consent, there would likewise be no wrong committed on the part of plaintiff's decedent, and it would avail defendant nothing to claim that such consent had been given or that she had submitted to the operation. 6 C. J. S.,

Assault and Battery, § 16; Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L.R.A.(N.S.) 439, 5 Ann. Cas. 303, 111 A. S. R. 462. Prosser, Torts, 119, 122; Restatement, Torts, § 59.

The complaint contains an allegation of duress. It also alleges:

"* * * because of her said pregnant condition, the said Ilene Eagen was, on March 21, 1947, in a weakened physical and mental condition, all of which the said defendant Raymond Older was fully aware. That pursuant to said conspiracy and in furtherance thereof, the said Raymond Older did, on said March 21, 1947, by means of threats of bodily harm and refusal to marry her and by other means of coercion and duress, compel the said Ilene Eagen to accompany him to the city of Mankato, Minnesota, and to go to the office there of the defendant W. A. Groebner. That thereupon, pursuant to said conspiracy and in furtherance thereof, the said defendant W. A. Groebner did on or about said March 21, 1947, perform an illegal operation of abortion upon the body of the said Ilene Eagen."

Conceding that an allegation of duress alone is not sufficient without stating facts upon which the duress is based, still this complaint does state facts sufficient to constitute a cause of action. The complaint is entitled to liberal construction. M. S. A. 544.16; Chamber of Commerce v. Wells, 96 Minn. 492, 105 N. W. 1124, where we held that the complaint was sufficient on a demurrer, and that if it was insufficient the remedy was by motion to make more definite and certain. We believe that is likewise true here.

Many of the allegations in the complaint are conclusions of law, but eliminating all conclusions of law would still leave the complaint barren of all allegation or admission that plaintiff's decedent consented to or voluntarily participated in or submitted to the abortion. We have no right to read into the complaint such admission. Consequently, it is not necessary for us to determine whether consent to or voluntary participation in the abortion by plaintiff's decedent would bar recovery. On this question the authorities are in hopeless conflict. Holding that consent is a bar are the following authorities: Hunter v. Wheate, 53 App. D. C. 206, 289 F. 604, 31

A. L. R. 980; Nash v. Meyer, 54 Idaho 283, 31 P. (2d) 273; Gold-namer v. O'Brien, 98 Ky. 569, 33 S. W. 831, 36 L. R. A. 715, 56 A. S. R. 378; Szadiwicz v. Cantor, 257 Mass. 518, 154 N. E. 251, 49 A. L. R. 958; Bowlan v. Lunsford, 176 Okl. 115, 54 P. (2d) 666; Martin v. Morris, 163 Tenn. 186, 42 S. W. (2d) 207; Androws v. Coulter, 163 Wash. 429, 1 P. (2d) 320. Holding the exact opposite are Milliken v. Heddesheimer, 110 Ohio St. 381, 144 N. E. 264, 33 A. L. R. 53; Martin v. Hardesty, 91 Ind. App. 239, 163 N. E. 610; Miller v. Bayer, 94 Wis. 123, 68 N. W. 869; Lembo v. Donnell, 117 Me. 143, 103 A. 11. Authors of texts are likewise in disagreement. Compare, 1 Cooley, Torts (4 ed.) § 97, and Prosser, Torts, 117, 123.

■ . There is another, and probably more persuasive, reason why the demurrer should be overruled. In addition to alleging the commission of the abortion, the complaint contains the following allegations:

"V.

"That as a result of said operation and while in the office of said defendant W. A. Groebner, the said Ilene Eagen became violently ill and unconscious, but that notwithstanding the same, the said defendants negligently failed to provide her with proper medical attention, and that, although both defendants were then fully aware of her serious condition, the defendant Raymond Older removed her from the office of the defendant W. A. Groebner in an unconscious condition and took her to his oil service station at Granada, Minnesota in the early morning of March 22, 1947, where he kept her without medical attention of any kind for the remainder of the night.

"VI.

"That by reason of said illegal operation of abortion and as a direct and proximate result of the wrongful, illegal, and unlawful acts of the said defendants and of the failure of said defendants to provide proper medical care for the said Ilene Eagen, she died on the 24th day of March, 1947."

These allegations bring the case within the rule stated in Depue v. Flatau, 100 Minn. 299, 111 N. W. 1, 8 L.R.A. (N.S.) 485. See, also, Prosser, Torts, 120.

In the case of Androws v. Coulter, 163 Wash. 429, 1 P. (2d) 320, the action was brought by the administratrix of the estate of a person who died following an abortion. The action seeks to recover for expenses incurred in the last sickness and burial of decedent. The court follows the rule that no recovery can be had for damages resulting from the abortion, but holds that the complaint, in addition, alleges that subsequent to the abortion the decedent did not receive proper care, saying (163 Wash. 432, 1 P. [2d] 321) :

"* * * notwithstanding the allegations of negligence in connection with the criminal operation, there are allegations that will permit proof, in addition to the operation performed by the defendant, that, upon becoming aware that the one upon whom the act was performed suffered from septicaemia and peritonitis, he wholly failed and neglected to prescribe for or treat her, and that he wholly abandoned her, knowing that she was so suffering, and knowing that her life was in danger, and without letting her family know of her true condition; and that, had he made known her true physical condition at the time it became known to him, or had he given her proper attention, the death of his patient would not have occurred. Proof of the facts thus alleged would establish a cause of action. A physician and surgeon has no more right to abandon his patient under such circumstances than he would had she become his patient under ordinary circumstances and in the best of faith."

The above holding applies to this case. Here, plaintiff seeks recovery not only on the ground that the abortion was improperly performed, but also upon the ground that after the abortion defendants failed to properly care for decedent. Clearly, consent to the abortion would be no bar to a cause of action based upon the claim that after performing the abortion, and knowing the dangerous condition of decedent, defendants failed to provide proper care. The complaint alleges that at that time she was unconscious. She could not consent to the care received while in that condition and was wholly dependent upon defendants. It is unconscionable to believe that defendants could abandon plaintiff's decedent under these circumstances

and thereafter be granted immunity from civil liability because our courts are closed to plaintiff for the reason that plaintiff's decedent had consented to the abortion.

Affirmed.

PETERSON, JUSTICE (dissenting).

■ Construed according to well-settled principles and the decisions applying them as settled law, the complaint alleges that decedent consented to the abortion which caused her death. The allegation that she at no time did "freely and voluntarily consent" to the abortion is in effect an allegation that she did consent thereto, but that the consent was not freely and voluntarily given. The characterization of the consent as not "freely and voluntarily" given is a mere conclusion of law and as such should be rejected, with the consequence that the only part of the allegation which stands is the one that she did consent. Ellis v. Keeler, 126 App. Div. 343, 110 N. Y. S. 542; Annotation, 119 A. L. R. 1001.

This conclusion is buttressed by the allegation that the neglect of defendant Older (referred to herein as defendant) in failing to provide medical care for decedent after the abortion was a cause of death rendering him liable for her death. The presence of that allegation can be explained only by the supposition that the pleader intended thereby to allege a cause of action for negligence in failing to provide suitable care for decedent after the abortion, to which she consented. If decedent did not in fact consent to the abortion and her death resulted from sickness caused by the abortion (the complaint alleges that her fatal sickness was so caused), defendant would have been liable for her death regardless of whether he was, or was not, negligent in caring for her afterward, upon the grounds that the unauthorized operation constituted an assault and that the sickness and death proximately were caused thereby. Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L.R.A.(N.S.) 439, 5 Ann. Cas. 303, 111 A. S. R. 462. The allegation was wholly unnecessary if a cause of action based upon an unauthorized operation had been set forth. But the allegation was necessary to establish a basis for the claim that, although decedent had consented to the abortion and

there could be no recovery for her death because of that fact, defendant was liable for subsequent negligence in failing to provide proper care for her. The case of Androws v. Coulter, 163 Wash. 429, 1 P. (2d) 320, holds that there may be recovery in such a case for the subsequent negligence, but, as will be shown later, such a holding is contrary to well-settled legal principles of this and other courts. Thus, the presence of the allegation that decedent did not "freely and voluntarily" consent to the abortion shows that the cause of action alleged is predicated upon an abortion to which decedent in fact consented.

The other allegations should be rejected as insufficient in substance and form. The allegation that defendant did "compel" decedent by means of threats of bodily harm, refusal to marry her, and other means of coercion and duress to accompany him to the dentist's office where the abortion was performed is entirely immaterial as a matter of pleading, however important it might be otherwise as an evidentiary matter. Where duress is relied on as a basis for recovery, it must appear that duress was not only employed, but that it was persisted in until the wrong was completed and that plaintiff had no escape therefrom. As said in Kraemer v. Deustermann, 37 Minn. 469, 473, 35 N. W. 276, 277:

"* * * in order to entitle a party to recover back money paid under a claim that it was a forced or compulsory payment, it must appear that it was paid upon a wrongful claim or unjust demand, under the pressure of actual or threatened personal restraint or harm, or of an actual or threatened seizure or interference with his property of serious import to him; *and that he could escape from or prevent the injury only by making such payment.*" (Italics supplied.)

Here, while the complaint attempts to allege that decedent was compelled by threats, etc., to accompany defendant to the dentist's office, it does not allege that she consented to the abortion by reason thereof. On top of this lack of legal substance, the allegations are mere conclusions of law and as such should be rejected. An allegation that a person was "compelled" to do an act is a mere conclusion

of law. Rand v. Board of Co. Commrs. 50 Minn. 391, 52 N. W. 901; 1 Pirsig's Dunnell, Minn. Pl. § 56, note 47. "Duress" should be pleaded by a statement of the facts constituting the duress and coercion. Johnson v. Velve, 86 Minn. 46, 90 N. W. 126; 1 Pirsig's Dunnell, Minn. Pl. § 504. Allegations that certain acts were procured by "coercion" or by "threats" and "intimidations" are mere conclusions of law. 49 C. J., Pleading, § 39; Chamberlain Machine Works v. United States, 270 U. S. 347, 46 S. Ct. 225, 70 L. ed. 619. In 70 L. ed. 619, there is an elaborate note to the Chamberlain case supporting this view, citing cases from other jurisdictions and our decision in the Kraemer case, *supra*. There is also an elaborate annotation to like effect to Coughlin v. City of Milwaukee, 227 Wis. 357, 279 N. W. 62, 119 A. L. R. 990, at p. 997, *et seq*. The plain reason for the rule is as said in Commercial Bank v. City of Rochester, 41 Barb. (N. Y.) 341, 342 (affirmed, 41 N. Y. 619):

"* * * The allegation or complaint is that the plaintiff was compelled to and did pay under protest and by compulsion and not voluntarily, to the said defendant, the said sum of $6,194.07. It seems to me that this is not a sufficient statement to make out a case of duress of goods, or such a compulsory payment as the rule above stated requires, to allow a recovery of the money paid. It states a mere conclusion of law, not the facts. The court must see from the facts stated, in such a case, that the payment was in fact compulsory and compelled by duress of the goods of the party making the payment. Whether the payment is compulsory in such a sense as brings the party within the rule of law applicable to such cases, is a question of law for the court, upon stated or conceded facts. The court may differ with the plaintiff in respect to what constitutes a compulsory payment."

This reasoning is in accord with ours in the Rand case, *supra*.

Requiring the pleader to state the facts rather than conclusions of law imposes no hardship upon him. As the court said in In re Goldsberry Estate, 95 Utah 379, 388, 81 P. (2d) 1106, 1110, 117 A. L. R. 1444, where allegations that a will was obtained by "undue

influence" which the testator was "forced and required to sign" were held to be insufficient as mere conclusions of law:

"* * * Apparently a few well-chosen words may throw the pleading on that side of the line where resort does not need to be made to a conclusion of law to make a clear and sufficient allegation of undue influence."

So it is here with respect to the allegations of duress.

Defendant's refusal to marry decedent did not as a matter of law constitute duress. It is not alleged that he had promised to marry her. Under the circumstances, his refusal amounted to the exercise of a plain legal right. A threat to do what one has a legal right to do or not to do does not constitute duress. First State Bank v. Federal Reserve Bank, 174 Minn. 535, 219 N. W. 908, 61 A. L. R. 467. Even a threat to break a contract has been held not duress. Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217, 16 L. R. A. 376, 32 A. S. R. 581; Hartsville Oil Mill v. United States, 271 U. S. 43, 46 S. Ct. 389, 70 L. ed. 822. It is to be remembered that a promise to marry is not specifically enforceable. Fry, Specific Performance (6 ed.) § 18. In any view, the allegation of refusal to marry does not show duress. How could it?

■ At the outset, plaintiff's right to maintain this action as administratrix is under M. S. A. 573.02, the same as decedent's would have been if she had lived. Foley v. Western Alloyed Steel Casting Co. 219 Minn. 571, 18 N. W. (2d) 541; Geldert v. Boehland, 200 Minn. 332, 274 N. W. 245, 275 N. W. 299; McLean v. Burbank, 12 Minn. 438 (530); 2 Dunnell, Dig. & Supp. § 2616. It is entirely accurate, therefore, to discuss the question of liability here as one solely between decedent and defendant.

As has been pointed out, if decedent did not consent to the abortion, the performance thereof upon her constituted an assault under the doctrine of Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L.R.A.(N.S.) 439, 5 Ann. Cas. 303, 111 A. S. R. 462, *supra,* and defendant would be liable for her death as a direct and proximate result of the sickness caused thereby. In that case, the question

whether defendant was negligent in failing properly to care for decedent after performance of the abortion would be entirely immaterial, and there would be neither occasion nor necessity to pass on it. The decision of the majority holds without qualification that a party performing an abortion or procuring it to be performed owes a duty to care for the woman upon whom it is performed, and it thus extends the duty of care to cases where the woman consented as well as to those where she did not. But, in any event, because, as has been pointed out, the complaint should be construed as alleging decedent's consent to the abortion, this is such a case. By consenting to the abortion, decedent was guilty at least of the crime of consenting to an abortion under M. S. A. 617.19, and, if she was quick with child, as it appears she was, of manslaughter under § 619.19. By procuring the abortion to be performed, defendant intended to commit the crime of procuring an abortion to be performed under § 617.18, but in fact, because of decedent's death, he committed manslaughter as defined by § 619.16. In any case, decedent's crime was a direct and proximate cause of her harm and death resulting therefrom.

While we have not passed on the question whether an abortionist is liable for injury to or death of a woman consenting to an abortion, we have definitely adopted rules and principles which preclude liability in such cases.

The controlling principle here is the one announced in Starrett v. Pedersen, 198 Minn. 416, 419, 270 N. W. 131, 132, that—

"* * * A violator of a criminal law cannot recover for an injury to which his own criminality was a directly contributing cause, for the law on its civil side will not aid one seeking relief from the consequences of his own transgression."

Our numerous cases so holding are collected in 2 Dunnell, Dig. & Supp. §§ 1885, 1924; 3 Id. § 4342, and are in accord with the rule universally followed elsewhere. Restatement, Restitution, p. 386. It is a fundamental rule of public policy (Levy v. Kansas City [8 Cir.] 168 F. 524, 22 L.R.A.[N.S.] 862; 1 Am. Jur., Actions, § 16; 1 C. J. S.,

Actions, § 13), based upon the principle, indispensable to the purity of the administration of justice, that courts should not enforce what is forbidden and denounced by law. Coppell v. Hall, 74 U. S. (Wall.) 542, 19 L. ed. 244.[2]

It logically follows under the rule that those engaged in a common criminal enterprise owe each other no duty either to exercise due care or otherwise while so engaged and have no rights *inter se* arising out of such crimes or acts done in the commission thereof. A few examples will suffice. A woman cannot recover for negligence of a physician in performing an abortion upon her in violation of statute with her consent, whether the action is founded on breach of contract or in tort. Hunter v. Wheate, 53 App. D. C. 206, 289 F. 604, 31 A. L. R. 980, and Annotation. The rule of the cited case is decisive here. But, further, a participant in a system or combination to violate the Sherman Anti-Trust Act cannot because of his own violation of the statute recover from other participants damages to his business resulting from the system or combination. Northwestern Oil Co. v. Socony-Vacuum Oil Co. Inc. (7 Cir.) 138 F. (2d) 967. One who is injured through the negligence of another while both are engaged in transporting troops in prosecuting a rebellion will not

---

[2]Lord Mansfield gave classic expression to the rule in Holman v. Johnson, 1 Cowp. 341, 343, 98 Reprint 1120, 1121, where he said:

"The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this; *ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are *equally* in fault, *potior est conditio defendentis*."

be granted any relief. Wallace v. Cannon, 38 Ga. 199, 95 Am. D. 385; Martin v. Wallace, 40 Ga. 52. One participating in a charivari constituting a violation of statute cannot recover for injuries inflicted by the negligence of another participant therein in discharging a loaded pistol. Gilmore v. Fuller, 198 Ill. 130, 65 N. E. 84, 60 L. R. A. 286. A participant in an unlawful hunting enterprise cannot recover for the negligence of a coparticipant in discharging a gun. Fristoe v. Boedeker, 194 Ill. App. 52. One embezzler can have no rights against a coembezzler arising out of their common embezzlements. Piechowiak v. Bissell, 305 Mich. 486, 9 N. W. (2d) 685. Coparticipants in thefts and burglaries have no recourse *inter se* arising out of their common crimes. Bean v. Home Detective Co. 206 N. C. 125, 173 S. E. 5. One robber has no recourse against another arising out of robberies committed by them as copartners. 2 Pothier, Obligation, pp. 2–3. A participant in sexual intercourse contracting a venereal disease has no recourse against the other participant to the act. Hegarty v. Shine [1878] 14 Cox C. C. 145, affirming 14 Cox C. C. 124.

The rule is the same in abortion cases. A cause of action for injury to or death of a woman cannot be based upon an abortion to which she consented, regardless of negligence on the part of the other participant. Hunter v. Wheate, 53 App. D. C. 206, 289 F. 604, 31 A. L. R. 980, *supra;* Nash v. Meyer, 54 Idaho 283, 31 P. (2d) 273; Goldnamer v. O'Brien, 98 Ky. 569, 33 S. W. 831, 36 L. R. A. 715, 56 A. S. R. 378; Szadiwicz v. Cantor, 257 Mass. 518, 154 N. E. 251, 49 A. L. R. 958; Bowlan v. Lunsford, 176 Okl. 115, 54 P. (2d) 666; Martin v. Morris, 163 Tenn. 186, 42 S. W. (2d) 207; Prosser, Torts, § 18, p. 125.

While, as has been pointed out, decedent by consenting to the abortion was guilty of a felony under either § 617.19 or § 619.19, and defendant by procuring the abortion to be performed was guilty under § 619.16 of manslaughter because of decedent's death resulting therefrom, and while they were not technically accomplices, they were in fact participants in a conspiracy to commit felonies which caused decedent's death. State v. Tennyson, 212 Minn. 158, 2 N. W. (2d) 833, 139 A. L. R. 987; Szadiwicz v. Cantor, *supra.* The con-

spiracy embraced the decedent's and defendant's going to the dentist's office to have the abortion performed and their return to Granada afterward. A criminal conspiracy includes not only the commission of the crime for which it was formed, but also all arrangements in furtherance thereof both before and after its commission. McDonald v. United States (8 Cir.) 89 F. (2d) 128. Consequently, the rule disallowing liability in cases of this kind applies here with all its vigor.

The rule disallowing liability in cases such as this accords with our own rule in analogous cases. Kirschbaum v. Lowrey, 174 Minn. 107, 218 N. W. 461 (consent to assault a complete defense) ; 1 Dunnell, Supp. § 523b; Welsund v. Schueller; 98 Minn. 475, 108 N. W. 483, 8 Ann. Cas. 1115; 5 Dunnell, Dig. & Supp. § 8717, and other authorities cited *infra*.

There are authorities to the contrary in abortion and assault cases holding that consent is no defense. Many of these are cited in the majority opinion. The principal of these are Miller v. Bayer, 94 Wis. 123, 68 N. W. 869; Milliken v. Heddesheimer, 110 Ohio St. 381, 144 N. E. 264, 33 A. L. R. 53; and 1 Cooley, Torts (4 ed.) § 97. These authorities are based upon the well-settled rule that no person can by his consent to a crime involving a breach of the peace, such as abortion and assault, legalize such acts, and upon the entirely fictitious theory that the state is an interested third party in every civil action to redress wrongs constituting such crimes, with the consequence that the party's consent to the crime is without legal effect.

As a matter of fact, in such cases the state is not a party at all, interested or otherwise, and, because that is true, it is pure fiction to say that it is. Under modern law, the punitive function belongs exclusively to the state; private prosecution is not permissible. Likewise, the assertion of a private right is a function belonging exclusively to the individual; the state has no part in it. The theory that the state as the sovereign is an interested party in cases of trespass involving a breach of the peace had its origin in the action

of trespass on the case. Over two and a half centuries ago the basis for the rule was abolished by statute. There is now no basis for it.

Originally, the action of trespass on the case, which was the exclusive remedy for such wrongs, had a twofold aspect in cases involving breaches of the peace, viz., one criminal and punitive to recover a fine for the crown, and the other civil and reparative to afford relief to the injured plaintiff. Thus, the sovereign was not only a party, but also a beneficiary of the action. In 1693, the case of Matthew v. Ollerton, Comb. 218, 90 Reprint 438, from which stems directly or indirectly the rule that consent to a crime involving breach of the peace is no defense in a civil action, decided that plaintiff's consent was no defense to an assault. This result was reached upon the theory that the victim's consent to an assault is no defense in a criminal case. The following year, 1694, fines in such cases were abolished by the Statute of 5 & 6 William and Mary, c. 12. Thereafter, the action had no criminal aspect and the public no interest in it. The action of trespass on the case thereupon became an ordinary civil action. The history of the question is ably and fully discussed by Bohlen in *Consent as Affecting Civil Liability for Breaches of the Peace*, 24 Columbia L. Rev. 819. Referring to Cooley, Torts, Bohlen says (24 Columbia L. Rev. 830):

"The statement that the State is a party in interest was, as has been seen, true, at least in theory, until 1694. It has not been true since then."

That Bohlen rather than Cooley states the correct view seems to be the consensus of modern scholars. Salmond, Torts (9 ed.) p. 38, par. 2, note (*1*); Restatement, Torts, § 60. Prosser, Torts, § 18, p. 123, says:

"If the defendant's act is a crime, affecting the interest of the public, the criminal law in many cases refuses to recognize the consent of the injured party as a defense. This is true, for example, of a fight by mutual consent which is a breach of the peace. The majority of the courts have attempted, in cases of mutual combat and similar batteries to vindicate a conception of public policy by hold-

ing that the consent given will likewise not protect the defendant against a civil action for the damage inflicted.

"This rule has been traced to a dictum in an early English case [Matthew v. Ollerton (1693), Comb. 218, 90 Reprint 438, *supra*], at a time when the action of trespass had a criminal character, and the state was directly concerned in it. Its survival is due to a misguided notion that the interests of the state require protection by allowing a civil action, and that the parties will be deterred from fighting by the fear of liability. But the cases have been roundly criticized on the ground that no one should be rewarded for his own participation in a wrong, that the state is quite able to protect itself by a criminal prosecution, and that the parties, if they give any thought to the law at all, are quite as likely to be encouraged by the hope that the loser will still win in court. A strong minority view, which has been gaining ground in recent decisions, holds that the consent will defeat the civil action, unless the force used exceeds the consent."

Furthermore, Miller v. Bayer, 94 Wis. 123, 68 N. W. 869, *supra,* cites as support for the rule there announced, among others, two Massachusetts cases. The Massachusetts court in Szadiwicz v. Cantor, 257 Mass. 518, 154 N. E. 251, 49 A. L. R. 958, *supra,* declined to follow Miller v. Bayer and to apply the rule of criminal cases that consent to an assault is no defense, but on the contrary applied the rule that one who consents to a criminal act (an abortion) cannot recover for harm resulting therefrom. Thus, the authority which the Wisconsin court cited for its decision repudiated the rule which it adopted and practically destroyed its value as an authority. Milliken v. Heddesheimer, 110 Ohio St. 381, 144 N. E. 264, 33 A. L. R. 53, *supra,* follows the rule laid down by Cooley. Because the rule announced by Cooley is unsound and is based upon a false premise, that of the Milliken case is also. Prosser, Torts, § 18, p. 125, disapproves both the Milliken and Miller cases.

Here, plaintiff alleges that the abortion was a direct and proximate cause of the illness which resulted in decedent's death. Hence,

the cause of action is based on her participation in a crime, and there can be no recovery.

■ Recovery here is not justified under the doctrine of Depue v. Flatau, 100 Minn. 299, 111 N. W. 1, 8 L.R.A. (N.S.) 485. In the cited case liability resulted from a legal transaction. Here, it is sought to impose liability for an illegal one in which decedent was a participant.

The Depue case does not hold that where one of several persons engaged in the commission of a crime sustains harm as the result of the criminal act the others are liable either for the resulting harm or for failing to protect him from the consequences thereof. So to hold would be contrary to settled law. As has been pointed out, a criminal act cannot create legally enforceable duties and responsibilities as between those concerned in the commission thereof. To hold otherwise would open the courts to criminals as tribunals for enforcement of rights founded upon violation of law. Because decedent and defendant here were joint participants in the crimes of abortion and submission to abortion, no legal duty of any sort could arise as between them. The law leaves them where it finds them.

So far as concerns the legal question here involved, the case of People v. Beardsley, 150 Mich. 206, 113 N. W. 1128, 13 L.R.A. (N.S.) 1020, 121 A. S. R. 617, 13 Ann. Cas. 39, is the same as the Depue case, except that in the cited case, unlike that of Depue, the relationship of the parties resulted from their participation in criminal and immoral acts. The cited case illustrates the difference in rule between cases where the relationship of parties is based upon a legal transaction from those where it is based upon participation in crime or immorality. In the one case the relationship may give rise to legal duty; in the other it does not. In the cited case, defendant was charged with manslaughter for failure to procure medical aid for his paramour, as a result of which she died. Defendant spent the night with her in his house in a drunken debauch, after which she took an overdose of morphine, which caused her to become stupefied. Instead of procuring medical aid for her, defendant

turned her over to a third person, who after some delay called a doctor, who found that she was dead. After an exhaustive review of the authorities, the court concluded that the circumstances gave rise to no duty on the part of defendant to care for her and, because that was true, held that he was not guilty of manslaughter. Quoting Mr. Justice Field in United States v. Knowles (D. C.) 4 Sawy. 517, 26 F. Cas. p. 800, No. 15,540, the court said (150 Mich. 215, 113 N. W. 1131):

"In the absence of such obligations, it is undoubtedly the moral duty of every person to extend to others assistance when in danger; * * * and if such efforts should be omitted by any one when they could be made without imperiling his own life, he would, by his conduct, draw upon himself the just censure and reproach of good men; but this is the only punishment to which he would be subjected by society."

So it is here.

Andrews v. Coulter, 163 Wash. 429, 1 P. (2d) 320, *supra,* is sound insofar as it holds that plaintiff cannot found a cause of action upon an abortion to which she consented. The Washington court expressly limited the rule there announced to cases involving physicians performing abortions. Defendant here, not being a physician and not having performed the abortion, would not come under the rule so limited. Whether the Washington court would hold him liable under the circumstances here was not decided. For that reason, the case is not in point. But the decision is both unsound and contradictory insofar as it holds that a physician is liable. In the first place, such a doctrine is contrary to the one that there can be no recovery in such a case. Hunter v. Wheate, 53 App. D. C. 206, 289 F. 604, 31 A. L. R. 980, *supra.* Furthermore, it creates liability as between joint participants in criminal acts where the policy of the law is to allow none, but rather to leave the parties where it finds them.

In conclusion, the consequences of allowing a recovery here are not only astounding, but contrary to the almost universal holding

of the authorities. A rule allowing liability here would allow it as between other criminals for acts done in prosecution of crimes in which the parties were joint participants. For example, a murderer would be entitled to recover from his accomplice not only for injuries sustained in committing the murder, but also for the latter's neglect in failing to provide proper care therefor. One kidnapper would be liable to another under the same circumstances. A liquor runner, a prostitute, and every other person engaged in a criminal or immoral enterprise would be afforded judicial aid in enforcing the so-called honor that obtains in the underworld, where the circumstances of his case are at all comparable to the instant one. These cases are not supposititious ones. Such cases are all too common, and those who might be held liable have the means and ability to pay any judgment that might be rendered against them. The inevitable consequence of such a rule would be to bring before the courts criminals of all sorts—murderers, robbers, thugs, thieves, prostitutes, gamblers, frauds, cheats, and others—to have adjudicated claims based on the crimes in which they participated. Courts were not intended as tribunals for the determination of such controversies. As said in Bartle v. Nutt, 29 U. S. (Pet.) 184, 189, 7 L. ed. 825, 827:

"The law leaves the parties to such a contract as it found them. If either has sustained a loss by the bad faith of a particeps criminis, it is but a just infliction for premeditated and deeply practised fraud; which, when detected, deprives him of anticipated profits, or subjects him to unexpected losses. He must not expect that a judicial tribunal will *degrade* itself by an exertion of its powers, by shifting the loss from the one to the other; or to equalise the benefits or burthens which may have resulted by the violation of every principle of morals and of laws." (Italics supplied.)

The demurrers here should have been sustained. Because that is true, we should reverse.

MAGNEY, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.

MATSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.