**BOWLAN v. LUNSFORD.**

No. 26236. Feb. 18, 1936.

Paul C. Thorn, for plaintiff in error.

Goode, Dierker & Goode, for defendant in error.

PER CURIAM. This action was commenced in the superior court of Pottawatomie county, Okla., and thereafter transferred by proper order of the court to the district court of said county. The defendant interposed a general demurrer to the petition of the plaintiff, and said demurrer was by the district court sustained, and the plaintiff elected to stand upon her petition, refused to plead further, and said petition was by the district court dismissed, and this appeal followed.

Plaintiff in her petition alleges substantially as follows: That on or about the

20th day of November, 1933, she was employed in the city of Shawnee, Okla., and prior to that day she was a chaste and virtuous unmarried female over the age of 21 years; that on or about said date she had a date with defendant and permitted said defendant to commit intercourse with her, and on account thereof she became pregnant. That she informed defendant of her condition and at his suggestion she went to a doctor in Kansas City, Kan., to have an operation performed which would produce an abortion; that defendant gave plaintiff money for expenses of the trip and to pay the doctor for the operation; that the doctor performed the operation in accordance with the suggestions and instructions of defendant, and that she paid the doctor for said operation from the funds given her by the defendant; that she returned to her home and soon thereafter became seriously ill and another physician was called to attend her; that she was thereafter removed to a hospital in Shawnee, but "on account of the improper and unprofessional acts of said doctor" which performed the operation from which the abortion resulted she lay for weeks near the point of death, and in order to partially recover her former health she was put to the expense of $805, and she asks damages of said defendant in said sum. She further asks damages of said defendant in the sum of $5,000 on account of said illicit intercourse, illegal operation, and the subsequent illness brought about by said illegal operation, all of which caused her irreparable injury to her standing in society, to her mental anguish and pain, and humiliation among her friends and acquaintances.

This is not an action based in any sense of the word upon damages for seduction, and it is not so treated by either of the parties in their briefs, so the action must be treated and considered in the light of the allegations of the plaintiff's petition, and, clearly, if the petition entitled the plaintiff to recover on any theory, or any part or portion of the amount sued for or claimed, it is good as against a general demurrer. Rhode Island Ins. Co. of Providence, R. I., v. Glass et al., 131 Okla. 108, 267 P. 840; Oklahoma Sash & Door Company v. American Bonding Company, 67 Okla. 244, 170 P. 511; Watkins v. Yell, Treasurer of Carter County, 73 Okla. 297, 176 P. 390; Burford et ux. v. Territorial Land Co. et al., 84 Okla. 102, 204 P. 274.

We must therefore determine one question in this case, and that may be stated as follows: May a woman recover damages from a man who induces her to submit to an operation which produces an abortion where she is of full age and voluntarily consents to the operation?

The whole cause of action of the plaintiff, if any, is based upon the illegal operation. No allegations of neglect on the part of the doctor performing the operation are alleged in the petition, and, clearly, if this were a suit against the doctor for negligent conduct of said operation, this demurrer would have to be sustained, if for no other reason than that no negligence is alleged. No statement is made wherein the doctor was negligent except as follows: "On account of the improper operation and unprofessional act. * * *" No statement is made in the petition that the defendant knew that said doctor was in the habit of doing medical work in a negligent manner, or by the exercise of any judgment whatsoever could have or should have known that said doctor would perform the said operation in a negligent manner.

The performing of an operation causing an abortion is a crime (section 1834, O. S. 1931), and a woman who voluntarily submits to an operation which brings about an abortion is guilty of a crime (section 1835, O. S. 1931), and a person who advises or procures any pregnant woman to procure the miscarriage of such woman is guilty of a crime (section 1834, O. S. 1931, supra).

We are unable to find any case decided by this court involving similar facts to those involved in the case at bar, and we, therefore, must look to the authorities from other jurisdictions to determine the proper answer to the main question involved herein.

It is the rule in all jurisdictions that the interruption of pregnancy has always been regarded as highly offensive to good morals and injurious to society, and we feel that this court should not give dignity to a cause of action based upon an immoral or illegal act whether the same is based upon a contract or on a tort. We find authorities from other jurisdictions which would give vitality to plaintiff's petition. On the other hand, we find just as many authorities which hold the facts alleged in plaintiff's petition do not constitute a cause of action, and we are of the opinion that the latter authorities are the controlling ones. Hunter v. Wheate, 289 F. 604; Szadiwicz, Adm'r, v. Cantor (Mass.) 154 N. E. 251; Martin v. Morris (Tenn.) 42 S. W. (2d) 207; Andrews v. Coulter (Wash.) 1 P. (2d) 320; and Nash et ux. v. Meyer (Idaho) 31 P. (2d) 273.

In the case of Hunter v. Wheate, supra, an action by a woman against a physician for the negligent performance of an operation by which an abortion was brought about, which action contained two counts, one based upon contract by which the doctor was to produce a miscarriage upon her and to give her proper treatment and care in connection therewith and alleging negligence on the doctor's part in the performance of the contract; and the other count based upon the same transaction without alleging a contract, but charging the same negligence. The Court of Appeals of District of Columbia, in passing upon the question and ultimately deciding that the woman had no cause of action, stated:

"It has long been the law that, where an action is founded upon an unlawful contract, the court will not interfere to relieve either of the parties thereto in an action against the other from the results thereof. In Higgins v. McCrea, 116 U. S. 671, 6 Sup. Ct. 557, 29 L. Ed. 764, it was said:

" 'No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such plaintiff.' * * *

"This was quoted from an earlier case. The authorities in support of this proposition are numerous, and only a few are referred to. (Citing cases.)

"This rule applies, whether the act is performed in the execution of a contract or not. In other words, it applies to transactions as well as to contracts, and hence the suggestion of appellee that the recovery here was upon the second count in the declaration as for a tort, regardless of the contract, is of no avail. If the act out of which the cause of action arises is immoral or illegal, the courts will not grant relief. (Citing cases.)"

In the Nash v. Meyer Case, supra, decided in 1934 by the Supreme Court of Idaho, that court denied the right of recovery by either the husband or wife from surgeon for damages on ground abortion was negligently performed, and in passing thereon said:

"There is this distinction between the purpose of the anti-abortion statute, and assault and battery, dueling, etc., the abortion statute is not designed for the protection of the woman, Herman v. Julian,

117 Kan. 733, 232 P. 864, only of the unborn child and through it society, while the assault and battery, dueling, etc., statutes are designed for the direct protection of the individuals concerned, so the exception must rest, not on the tender care or protection of the statute for the woman, but generally, that an illegal act is inherently fraught with danger to the life, health and safety of the individual. But neither does the opinion in the Milliken Case nor the evidence herein show that there is more danger in the case of an illegal than a legal abortion. * * *

"It seems the fatal fallacy in giving complete and exclusive recognition to the exception relied on by respondents is that, to apply the rule laid down in battery cases, we must assume two false or at least not supported premises, first, that the anti-abortion statute was designed to protect the woman, and second, that an illegal abortion is fraught with more danger to a woman than a legal abortion or any other serious operation. * * *"

We hold that the anti-abortion statutes in Oklahoma were enacted and designed for the protection of the unborn child and through it society.

We have no fault to find with the rule laid down in the assault and battery or mutual combat cases and particularly do we have no fault to find with the language used by this court in the case of Colby v. McClendon, 85 Okla. 293, 206 P. 207, referred to in plaintiff's brief. We merely state that the rule laid down in that case is not applicable in this case.

While it is unquestionably true that crimes against the laws of the state usually constitute torts for the commission of which persons thereby injured may maintain actions for the recovery of damages, yet this general rule is qualified by the equally general rule and universal rule that where parties to an immoral or illegal transaction are in pari delicto with each other, each is estopped, as to the other, to take advantage of his own moral turpitude, illegal act or criminal conduct for the purpose of recovering damages for injury sustained as a consequence of their joint wrong. 1 C. J. 957, sec. 52, and notes; 1 R. C. L. 316-317, and notes.

And as between parties in pari delicto the law will aid neither, but will leave them as it finds them.

These principles apply both at law and in equity, and whether the transaction is executed or executory, or is malum in se or merely malum prohibitum. Upon like prin-

ciples a defendant will not be permitted to set up his own wrong in defense of an action by an innocent plaintiff, and it is only upon grounds of public policy, and not out of consideration for defendant, that he is permitted to do so in cases where the parties are in pari delicto. 1 C. J. 959 and notes. In the case at bar plaintiff is not innocent, because she submitted to the operation for abortion.

The general rule stated above is subject to limitations and exceptions, but a close study of those cases will reveal that they are cases where the parties are not regarded as being in pari delicto.

We can find no better choice of words to conclude this opinion than those used by Mr. Justice Brandeis in his dissenting opinion in the case of Olmstead v. United States, 72 L. Ed. 944, 277 U. S. 438:

"The door of a court is not barred because the plaintiff has committed a crime. The confirmed criminal is as much entitled to redress as his most virtuous fellow citizen; no record of crime, however long, makes one an outlaw. The court's aid is denied only when he who seeks it has violated the law in connection with the very transaction as to which he seeks legal redress.

"Then aid is denied despite the defendant's wrong. It is denied in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination."

The action of the lower court in sustaining defendant's demurrer and dismissing plaintiff's petition is sustained.

The Supreme Court acknowledges the aid of Attorneys John R. Pearson. E. H. Mattingly, and W. N. Palmer in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Pearson and approved by Mr. Mattingly and Mr. Palmer, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.