1997 OK 142

**CNA INSURANCE COMPANY,**
Appellant,

v.

**KRUEGER, INC., OF TULSA d/b/a B.M.I., Inc., now B.M.I., Inc., an Oklahoma Corporation, Appellee.**

No. 85796.

Supreme Court of Oklahoma.

Nov. 18, 1997.

As Corrected Dec. 24, 1997.

Eugene Robinson, John B. DesBarres, McGivern, Scott, Gilliard, Curthoys & Robinson, Tulsa, for Appellant.

Richard W. Wassall, Knight, Wilkerson, Parrish & Wassall, Tulsa, for Appellee.

HARGRAVE, Justice.

¶1 The sole issue is whether the trial court erred in giving a jury instruction on assumption of risk based on the facts of this case. Because we find that the facts support giving the instruction and the record does not reflect a probability that the jurors were misled and thereby reached a result different from that which they would have reached but for the error, we vacate the opinion of the Court of Civil Appeals and affirm the trial court.

¶2 This case involved a faulty fryer in the kitchen of a truck stop. The fryer malfunctioned and the manager, Mr. Smith, was unable to turn it off at the switch. The manager called B.M.I. for repairs, but B.M.I. could not send a repairman until the next day, so the manager called for an electrician to come immediately to turn off the electricity to the fryer at the main circuit breaker, which was kept in a locked room. Smith gave the assistant manager, Mr. Lishbrook, a key to the room and instructed him to take the repairman into the boiler room and turn on the circuit breaker for him the next morning, and to make sure the circuit breaker was turned off when the repairman left. The repairman arrived the next day and Lishbrook let him into the locked room in order to turn on the circuit breaker. The repairman was on the premises for only a few minutes before determining that he would need a replacement part in order to fix the fryer. The repairman left, after informing Lishbrook that it would take several days to obtain the part. Mr. Lishbrook testified that he asked the repairman if he had turned off the circuit breaker, and after being assured that he had, Lishbrook did not investigate for himself. Shortly after the repairman left, the fryer caught fire and caused extensive damage to the restaurant.[1]

¶3 CNA, the insurer, paid $42,348 to the truck stop and sought to recover from B.M.I. through subrogation. CNA alleged negligence on the part of B.M.I.'s employee in failing to turn off the fryer at the circuit breaker before leaving, which resulted in the fire. B.M.I. admitted that its employee Moore visited the truck stop on Saturday and saw the fryer, but Moore testified that when he arrived, no one had a key to the circuit breaker room and that he refused to work on the fryer until the power was off, so he left. Moore testified that his total time spent at the truck stop was 3 to 5 minutes.

¶4 B.M.I. contended, in addition, that the truck stop assumed the risk that the defective fryer might cause a fire because Lishbrook did not switch off the power to the fryer himself, or check to make sure the fryer was turned off at the circuit breaker, despite having been instructed by the manager to do so. B.M.I. requested and received

---

**1.** It was disputed whether the repairman was even an employee of B.M.I.

the following instruction on assumption of risk, to which CNA objected:

"Plaintiff's insured assumed the risk of injury resulting from B.M.I., Inc.'s negligence if its employee, Rick Lishbrook, voluntarily exposed Plaintiff's insured to injury with knowledge and appreciation of the danger and risks involved.

To establish this defense, B.M.I., Inc., must show by the weight of evidence that:

1. Mr. Lishbrook knew of the risk and appreciated the degree of danger.

2. Mr. Lishbrook had the opportunity to avoid the risk.

3. Mr. Lishbrook acted voluntarily.

4. Mr. Lishbrook's action was the direct cause of Plaintiff's insured's injury."

¶ 5 The instruction was taken from the Oklahoma Revised Jury Instructions Second. The trial judge also instructed on contributory negligence. The jury returned a verdict for the defendant, B.M.I. CNA Insurance appealed and the Court of Civil Appeals reversed and remanded the case. B.M.I. sought certiorari.

¶ 6 The Court of Civil Appeals felt that the evidence supported a contributory negligence instruction, but not one on assumption of the risk. The trial judge instructed on both contributory negligence and assumption of the risk. We find that there was evidence to support giving an instruction on assumption of risk and further, that there is no showing of the probability that the jurors were misled and reached a different conclusion than they would have reached but for the questioned instruction. *Woodall v. Chandler Material Co.,* 716 P.2d 652 (Okla. 1986).

¶ 7 B.M.I. asserts that because there was evidence presented at trial to warrant an instruction on assumption of risk, it was not error for the court to give the instruction. We agree. B.M.I. argues that even if the defendant in a negligence case is found to be at fault, the plaintiff is barred from recovery if he knew of the unreasonable risk created by the defendant's conduct and voluntarily chose to encounter that risk. Thus, B.M.I. argues, the plaintiff's conduct is viewed as somewhat similar to contributory negligence,

citing *Thomas v. Holliday by and through Holliday,* 764 P.2d 165 (Okla.1988) footnote 8.

¶ 8 Unlike the defense of contributory negligence, an assumption of risk defense may exist in absence of negligence on the part of the plaintiff. *Byford v. Town of Asher,* 874 P.2d 45 (Okla.1994). There we were discussing the third situation in which the defense of assumption of risk may arise: voluntarily exposing oneself to a known danger, even though not negligent in so doing. The plaintiff is deemed to assume the risk of his injury, we said, but the defense requires "a subjective standard in evaluating a plaintiff's knowledge, comprehension and appreciation of the risk." We said that unlike contributory negligence which must be compared to the primary negligence of the defendant, with the plaintiff's recovery reduced accordingly, the defense of assumption of risk may exist in the absence of negligence on the part of the plaintiff and still constitute an absolute bar to recovery.

¶ 9 In the alternative, B.M.I. argues that if it was error to instruct on assumption of the risk, the mistake was harmless because the instruction did not inform the jury that assumption of the risk is a complete defense to plaintiff's claim.

¶ 10 The parties disputed whether B.M.I.'s employee had even attempted to repair the fryer, and whether Jack Moore, the employee of B.M.I., had left the truck stop without shutting off the power to the fryer. Evidence was presented at trial that the assistant manager had been left in charge of the fryer repair and had been given a key to the boiler room containing the circuit breakers. Mr. Lishbrook was instructed to let the repairman in, turn on the circuit breaker, and make sure that the circuit breaker was shut off afterwards. Mr. Lishbrook admitted that he did not check to see whether the breaker was turned off, but instead relied on the repairman's statement that it had been turned off.

¶ 11 In the case at bar, though more properly a question of contributory negligence, there was evidence sufficient to support giving an instruction on assumption of

risk. The given instruction informed the jury that Mr. Lishbrook had to know of and appreciate the danger of not turning off the switch. That he did know and appreciate the risk is evident under any version of the disputed facts. The jury could find, based on the facts, that he "voluntarily" or "negligently" failed to check on the circuit breaker, creating the risk of a fire starting. The given instruction was taken directly from the uniform jury instructions and did not inform the jury that assumption of the risk would defeat plaintiff's claim.

¶ 12 There is ample evidence on which the jury could have found that the defendant BMI was not at fault, or that the jury may not have believed the plaintiff's employees' statements. At trial it was revealed that Mr. Smith, the general manager had testified by deposition that he had been present and seen BMI's employee on the day of the fire and had let him into the boiler room to work on the breakers, and that Mr. Moore told him that he needed to get a part and would have to come back later. At trial, Mr. Smith admitted that this account was not true and that he had not in fact been at the restaurant when the electrician came on Saturday morning.

¶ 13 In light of the disputed facts as to whether the repairman was an employee of B.M.I., whether he did any work on the fryer upon reaching the truck stop, and whether there may have been more than one repairman at the truck stop, the jury was presented with different versions of what happened. The jury heard the testimony offered, and may not have believed the testimony, or may have believed that even if the testimony was true, CNA failed to prove negligence on the part of B.M.I. In other words, it is not clear that, but for the assumption of risk instruction, the jury would have found in favor of CNA.

¶ 14 When reviewing jury instructions, we look at whether the probability arose that the jurors were misled and reached a different conclusion due to an error in the instruction given. *Cimarron Feeders v. Tri–County Electric Co–op., Inc.*, 818 P.2d 901, 902 (Okla.1991). In that case we found that the jury instruction misstated ap-

plicable law where the trial judge specifically added language to the instruction that would have exempted the particular fact situation and changed the entire meaning of the statute. The trial judge instructed the jury that a driver who is passing another vehicle is not bound by the law providing that a driver shall not follow another vehicle too closely. To compound the error, the trial judge in that case refused to give an instruction that would have informed the jury that "passing" according to Oklahoma statutes meant passing on the left, while in that case the driver of the truck had attempted to pass on the right side of a truck that was making a right hand turn. We found that these circumstances gave rise to a probability that jurors were misled, thereby reaching a different conclusion than they would have but for the refusal to give the proposed instruction.

¶ 15 In reviewing the propriety of given instructions, the instructions are to be viewed in whole rather than separately. And, where it appears that instructions taken as a whole do not establish that the jury was misled or that complaining parties' rights were prejudiced, the verdict will not be set aside. *Middlebrook v. Imler, Tenny & Kugler MDs, Inc.*, 713 P.2d 572 (Okla.1985). Instructions are sufficient when, considered as a whole, they present the law that is applicable to the issues.

¶ 16 In the present case, the court instructed the jury on both contributory negligence and assumption of the risk, and the jury deliberated for approximately 15 to 20 minutes before returning a verdict for the defendant, B.M.I. The law was correctly stated and, based on the evidence in the case, there were facts to warrant giving the instruction on assumption of risk. We cannot find, under the facts of this case that the jury was misled by the assumption of the risk instruction given.

## ATTORNEY FEES

¶ 17 CNA argued on appeal that the award of attorney fees and costs to B.M.I. should be vacated on the grounds that 1) the jury verdict should be reversed 2) the trial court abused its discretion by not determin-

ing a reasonable attorney fee, and 3) as to a later award of additional fees and costs, the trial court's previous award precluded additional requests by B.M.I. for attorney fees and costs. The Court of Civil Appeals reversed the trial court and accordingly vacated the award of attorney fees and costs.

¶18 CNA stated that the trial court awarded B.M.I. an attorney fee in the amount of $17,415 plus $3,350 costs on August 17, 1995. B.M.I. filed a supplemental application for attorney fee in the amount of $1,017 and $1,092.50 in costs. The trial court, by order of October 16, 1995 gave B.M.I. an additional attorney fee in the amount of $500.00 and additional costs of $20.00. As to the original attorney fee award, CNA objected to some of the hours spent, deposition travel costs, and the cost of transcripts in excess of $2.50 per page. A local attorney testified that the fees were reasonable. CNA did not present expert testimony at the hearing on attorney fees.

¶19 The standard of review in determining whether fees awarded by the trial court are reasonable requires that we affirm the trial court's decision unless we find abuse of discretion. *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 663 (Okla. 1979). This standard means that it must be found that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence. *Abel v. Tisdale*, 619 P.2d 608, 612 (Okla.1980). We find no abuse of discretion in the trial court's award.

**CERTIORARI GRANTED PREVIOUSLY; THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED AND THE TRIAL COURT'S JUDGMENT IS AFFIRMED.**

¶20 HODGES, LAVENDER, OPALA, WILSON and WATT, JJ., concur.

¶21 KAUGER, C.J., and SUMMERS, V.C.J., concur in result.

¶22 SIMMS, J., dissents.

