2006 OK CIV APP 32

**In the Matter of A.A.C.P., D.L.N.G., and G.M.D.P.-H., deprived children.**

**Sharon D. and Donald H., Appellants,**

**v.**

**State of Oklahoma, Appellee.**

**No. 101373.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 14, 2006.

As Corrected Feb. 17, 2006.

M.C. Smothermon, Oklahoma City, OK, for Appellants.

Jane A. Brown, Assistant District Attorney, Oklahoma City, OK, for Appellee.

JOHN F. REIF, Judge.

¶ 1 Sharon D. appeals the judgment terminating her parental rights to her minor children, A.A.C.P., D.L.N.G., and G.M.D.P.-H. Donald H. appeals the same judgment terminating his parental rights to G.M.D.P.-H. The judgment was entered following a jury trial and upon verdicts recommending termination on the ground of "chronic neglect." 10 O.S.2001 § 7006–1.1(A)(10)(e). Each appellant chose to conduct his/her defense pro se at the jury trial, but sought and received court-appointed counsel on appeal.

¶ 2 Appellants seek reversal of the judgment, basically arguing that they did not receive a fair trial. Their primary contention in this regard is that the trial court erred in not *sua sponte* considering their need for standby counsel. Their brief asserts that "[b]ecause the Trial Court did not determine Appellants' minimum standard of competency or educational level for the record, standby counsel should have been appointed to assist Appellants." In essence, they propound that standby counsel is a necessary procedural safeguard and failure to appoint standby counsel under the circumstances resulted in a denial of procedural due process.

¶ 3 Appellants also allege that prejudicial errors occurred in the trial court's instructions and the closing argument of counsel for the State. As concerns the instructional error, they point out that the trial court instructed the jury that "torture" was a statutory ground for termination, along with

646

chronic neglect, even though torture was not an issue in the case. Concerning the closing argument error, they cite numerous instances where counsel for the State said "I think" or "I don't think" in discussing the evidence. They maintain that this was improper opinion argument by a prosecutor. They argue that these errors are both sufficiently prejudicial to warrant reversal, and are the type of errors likely to occur unless standby counsel is provided to parents proceeding pro se.

■ ¶ 4 The foregoing were the only issues/errors for which argument and authority were presented in the appellants' brief on appeal. Accordingly, they are the only issues/errors we will address and decide on appeal. Only those allegations of error urged in the briefs will be addressed, the remainder being deemed waived. *Hawkins v. McElhanon,* 1957 OK 187, ¶ 2, 315 P.2d 667, 668 (per curiam) (citation omitted). We make this observation to underscore the fact that appellants made no contention in either their petition-in-error or brief that the judgment and verdicts were not supported by clear and convincing evidence.

I.

¶ 5 To support their contention concerning standby counsel, appellants cite the rule from criminal prosecutions:

Once a defendant makes a demand [to proceed pro se], it is incumbent upon the trial court to advise him on the record of the dangers and disadvantages of self-representation, receive from him an intelligent and voluntary waiver of his right to counsel, and in appropriate circumstances appoint standby counsel to advise and assist the defendant upon his request.

*Bowen v. State,* 1980 OK CR 2, ¶ 20, 606 P.2d 589, 594 (citing *Stiner v. State,* 1975 OK CR 156, ¶¶ 14–15, 539 P.2d 750, 753).

¶ 6 Appellants suggest that parents proceeding pro se in a termination case should be affirmatively advised along the lines recommended in *Coleman v. State,* 1980 OK CR 75, ¶ 8, 617 P.2d 243, 245–46. The *Coleman* case notes that the trial judge must clearly explain to the defendant the inherent disadvantages in self representation, such as lack

of knowledge and skill as to rules of evidence, procedure, and applicable law. The *Coleman* case also stresses that the court make the defendant aware that the trial court is not required to appoint standby counsel, that the defendant will waive any argument of incompetent counsel on appeal and that the trial judge will not effectively operate as counsel or co-counsel for the defendant.

¶ 7 Appellants concede that even in the context of a criminal prosecution "there is no constitutional right to representation partially pro se and partially by counsel," but stress that the Oklahoma Court of Criminal Appeals "maintains the position that the preferable choice for the trial court is that standby counsel be appointed."

¶ 8 The Oklahoma Supreme Court has long acknowledged that "the relationship of parents to their children is a fundamental right with constitutional protection, and there are similarities between criminal cases and parental termination cases." *In re S.T.G.,* 1991 OK 11, ¶ 9, 806 P.2d 636, 638–39 (citation omitted). However, the Oklahoma Supreme Court has also stressed that "parental termination cases and criminal cases are not the same" for purposes of determining whether principles applicable in criminal cases should likewise be applied in termination cases. *Id.,* 806 P.2d at 639. Clearly, the fact that there are analogous fundamental interests in each case that require procedural safeguards when threatened with governmental deprivation cannot alone be the basis for determining whether a particular procedural safeguard in a criminal prosecution will be applied in a termination case.

¶ 9 The Oklahoma Supreme Court has said that "[t]he essence of procedural due process in the context of a proceeding to terminate parental rights is a fair opportunity to be heard and to present a defense." *In re A.M.,* 2000 OK 82, ¶ 16, 13 P.3d 484, 489. The Oklahoma Supreme Court has also said the question of "whether the individual was afforded an appropriate level of process ... must be determined on a case-by-case basis because the due process clause does not by itself mandate any particular form of procedure." *Id.* at ¶¶ 7–9, 13 P.3d at 487 (citations

omitted). An appellate court makes this determination de novo. *Id.* at ¶ 6, 13 P.3d at 486–87.

■ ¶ 10 In deciding whether a parent in a deprived/termination proceeding was afforded an appropriate level of process in a given situation, three factors must be assessed. *Id.* at ¶ 10, 13 P.3d at 487–88. First, a court must consider the private interest that will be affected by the state's action. *Id.* Second, the court must consider the risk of erroneous deprivation posed by the procedures employed and the probable value, if any, that additional or substitute procedures would provide. *Id.* Third, the court must consider the governmental interest at stake, including administrative and fiscal burdens that alternate procedures would generate. *Id.*

■ ¶ 11 In a proceeding to terminate parental rights, the private parent-child interest and the governmental interest in protecting children are both of the "utmost importance." *Id.* at ¶ 11, 13 P.3d at 488. Therefore, the focus will nearly always be on "the risk of an erroneous deprivation of [a parent's] rights" in deciding the appropriate level of process in a given situation. *Id.* at ¶¶ 10–11, 13 P.3d at 487–88.

¶ 12 In *A.M.*, the Oklahoma Supreme Court was called upon to decide whether excluding the parent from the courtroom during the child's testimony in a termination of parental rights case resulted in a denial of procedural due process. The Supreme Court observed: "It is evident that any restriction a judge places on the opportunity for face-to-face confrontation ... enhances the risk of an erroneous deprivation of parental rights." *Id.* at ¶ 13, 13 P.3d at 488. The Supreme Court also observed that "when a court excludes a parent from the courtroom during a child's testimony, the court should consider alternative procedures to ensure the efficacy of the parent's cross-examination of the child [such as] provid[ing] the excluded parent adequate time to consult with his or her attorney after the child's direct testimony and before the commencement of the child's cross-examination." *Id.* at ¶ 14, 13 P.3d at 488.

¶ 13 In *A.M.*, the Supreme Court noted that the trial court had failed to adopt alternative procedures to ensure the efficacy of the excluded parent's cross-examination. The Court nonetheless decided that there was little risk under the facts that the parent's exclusion led to an erroneous decision. The Court ultimately concluded that there was no denial of procedural due process nor erroneous deprivation of parental rights, because "the mother [the excluded parent] failed to show that her exclusion from the courtroom impaired her ability to defend the termination case." *Id.* at ¶ 15, 13 P.3d at 48.

■ ¶ 14 In applying the teachings of *A.M.* to the case at hand, we think it is evident that errors are much more likely to occur in termination cases where parents proceed pro se and conduct their own defense. We also conclude that the trial court should make a record concerning the parents' decision to forego representation and to proceed pro se. This record should reflect that the parent has made the decision voluntarily, was generally warned about the disadvantages of self-representation and was informed that the trial court could not advise or help the parent. Like the Court of Criminal Appeals, we think the preferable choice for the trial court is to appoint standby counsel in appropriate circumstances, but we leave that decision to the discretion of the trial judge.

■ ¶ 15 With these observations in mind, we conclude that the record of the case at hand reflected that the trial court appropriately handled the parents' decision to proceed pro se. We also conclude there was little risk under the facts that the failure to appoint standby counsel led to an erroneous decision.

¶ 16 Before deciding to proceed pro se, parents were specifically advised of their right to court-appointed counsel, received court-appointed counsel, only to fire the court-appointed counsel. Thereafter, parents also hired privately-retained counsel and fired this counsel as well. While probably not fully appreciating how these attorneys could help them, parents at least had some basis to decide that they could do at least as

good a job representing themselves as the lawyers they had conferred with.

¶ 17 In addition, the record reflects that parents received the formal discovery materials that counsel for the State had provided to their retained counsel, and obtained copies of Department of Human Services (DHS) records and reports relevant to the case. Parents had the opportunity to know what adverse evidence they would be facing at trial, to prepare their response and to secure witnesses to testify in their behalf.

¶ 18 At the hearing where the court ordered that the parents be provided the DHS records and reports relevant to the case, the trial court made the following statement:

> Mother and father Mr. H[.] appear and have previously been in front of the bench and have announced to the Court that they are proceeding pro se. The Court has advised that they will be representing themselves, that one can't represent the other. The Court has also strongly urged that they not proceed pro se in this case. It's their right to do. I strongly urge that they retain an attorney as this matter is set for jury trial on a very serious issue of terminating their parental rights.

At the beginning of trial, the trial court similarly noted on the record:

> Before we bring the jury in, I wanted to, on the record, the parents are here, mother and Mr. H[.] They appear today pro se for trial, and I believe announced to the Court, for the first time in July of this year, July 26th, hearing that they would be representing themselves or be pro se.
>
> And since that time, and again this morning, the Court has advised, and I do advise against that. This is a jury trial, which includes empanelment of the jury and a regular civil jury trial and the average lay person has no clue about the procedure and how to properly represent themselves.
>
> The parents have had lawyers in the past in this case but choose to go pro se. I've also admonished our—not admonished, but advised both that one cannot represent the other. You have to stand on your own individual behalf. And I would,

again, ask you today: Ma'am, are you wanting to proceed pro se?

> MS. D[.]: Yes, ma'am.
>
> THE COURT: Sir, are you?
>
> MR. H[.]: Yes, ma'am.
>
> THE COURT: All right. Thank you. Anything else for the record before we get the jury?
>
> MS. BROWN: No. Your Honor.
>
> THE COURT: Okay. I will just tell you briefly, sir and ma'am, that the law does allow pro se representation, of course, but the law does not require the Court to give you any special help procedurally or in evidentiary matters because you are representing yourself.

¶ 19 At the trial, each parent cross-examined the State's witnesses, called witnesses in support of their defense and testified on their own behalf. Also, each parent made a closing argument to the jury that challenged the State's evidence and stressed evidence that favored their request not to terminate their respective parental rights.

¶ 20 On the whole, the record reflects that the parents, acting pro se, prepared a defense to the State's request to terminate their parental rights, presented and supported their defense by cross-examination of the State's witnesses and by calling witnesses on their behalf, and articulated their defense to the jury in closing argument. While not legally trained, they demonstrated they were capable of defending their parental rights pro se.

¶ 21 In a few words, parents were afforded "a fair opportunity to be heard and present a defense," albeit pro se. Even though the trial court did not consider the alternative of standby counsel, we conclude, like the Oklahoma Supreme Court in *A.M.*, that there was little risk under the facts that the failure to consider standby counsel led to an erroneous decision.

## II.

¶ 22 Appellants also argue that the trial court committed reversible error in giving two jury instructions that included "torture" as ground for termination (when this

was not an issue), and by allowing improper opinion argument by counsel for the State. We first observe that neither parent raised any objection to the jury instructions or the closing argument by counsel for the State. As a general rule, a party who makes no objection to the instructions of the court to the jury waives any error therein. *Hawkins v. McElhanon*, 1957 OK 187, ¶ 2, 315 P.2d 667, 668. Similarly, "[f]ailure to object or move for a mistrial at the time of allegedly prejudicial argument waives the alleged error and the party will be deemed to have taken its chances with the jury." *English v. Wal–Mart Stores, Inc.*, 2001 OK CIV APP 5, ¶ 16, 16 P.3d 1136, 1142 (citations omitted).

¶ 23 The only question that we must independently address is whether the probability arose that the jurors were misled by being instructed that "torture" was a ground for termination, when torture was not a ground alleged in the State's Amended Petition or an issue upon which any evidence was adduced. *CNA Insurance Co. v. Krueger, Inc.*, 1997 OK 142, ¶ 14, 949 P.2d 676, 679. To answer this question, we must review the instructions as a whole. *Id.* at ¶ 15, 949 P.2d at 679.

¶ 24 The word "torture" appears in Instructions Nos. 9 and 10. These instructions advise the jury about the findings they must make in order to terminate parental rights. These instructions advise the jury that the second of three findings they must make is that "the parent has inflicted chronic abuse, chronic neglect or torture on the child, a sibling of the child or another child within the household where the child resides."

¶ 25 This language is a direct quote from 10 O.S.2001 § 7006–1.1(A)(10)(e)—the statute cited in the Amended Petition and Statement of the Case as authority for termination. The Amended Petition and Statement of the Case otherwise make it clear, however, that chronic neglect is the *particular* circumstance under this statute being pressed as the basis for termination and no other.

¶ 26 In reading the instructions as a whole, a reasonable juror would understand that chronic neglect was one of three alternative grounds for termination provided by law, along with torture, and would further understand that "torture" was not a ground in every case or in the case before them. We think it is highly unlikely the jury was misled by Instruction Nos. 9 and 10. "[W]here it appears that instructions taken as a whole do not establish that the jury was misled or that complaining parties' rights were prejudiced, the verdict will not be set aside." *CNA, 1997 OK 142*, ¶ 15, 949 P.2d at 679 (citation omitted).

### III.

¶ 27 Finding no error as alleged by appellants in their brief on appeal, we affirm the judgment on the jury verdicts terminating Sharon D.'s parental rights to A.A.C.P., D.L.N.G. and G.M.D.P.-H, and Donald H.'s parental rights to G.M.D.P.-H.

¶ 28 AFFIRMED.

GABBARD, P.J., concurs, and RAPP, V.C.J., concurs specially in part and dissents in part.

RAPP, V.C.J., concurring specially in part and dissenting in part:

¶ 1 I agree that the Majority has handled very well the alleged error involving counsel in the termination proceedings. I would require that in future cases the trial court would be required to make a full and complete disclosure, on the record, of the potential consequences of self-representation and the refusal to accept assistance of counsel. Such disclosure must be sufficient to inform parents of the reasons for having an attorney and the protections offered by representation. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Ex parte Cannon*, 1960 OK CR 36, ¶ 5, 351 P.2d 756, 759; *see Santosky v. Kramer*, 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982) (Court must provide for fundamentally fair procedures); *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963). The disclosure should be accompanied by documentation, signed by an attorney, stating that the attorney counseled with the parents and believes they understand the consequences and penalties of self-representation, together with the possible effects on

themselves and their children and that the parents have made an informed and knowledgeable waiver of their right to counsel and desire to voluntarily represent themselves. Further, the disclosure should contain input from the children's counsel that counsel concurs in the parents' action and that the parents' action is in the best interest of the children.

¶ 2 The disclosure should also contain clear information as to procedure, pitfalls, and the court rules. It should also advise the parents that the judge may not act as the parents' advisor during trial. The parents must also be fully advised and informed of the consequences of an adverse decision affecting their parental rights and those of the children. In addition, a record should be made of the proceeding after the parents' consultation with counsel.

¶ 3 I dissent from the Majority only because of the introduction of the word "torture" in the trial court's instructions. There is more in this case than the issue of how to resolve *pro se* representation in matters of this nature. The word "torture" was introduced, without any basis, and raises the specter of the occurrence of such an event. The use of the word "torture" in the trial court's instructions is biased, inflammatory and misleading. It implies that such an event did occur because, I believe, the layman relies upon, and believes in, the sanctity of the

court and its truthfulness and the unlikelihood that it misrepresents fact—if it says it is so, it must be true. Thus, it may be assumed that the lay jurors upon hearing the court's use of this word in a proceeding means that "torture" did occur. It is the classic evidentiary harpoon! Moreover, even where the litigants fail to object to the instructions, this Court can still review for fundamental error.

¶ 4 Arguing for the elimination of a statutory word from a jury instruction is a subtle and difficult task even for an attorney. The Majority's review confirms the difficulty of the task and the need to address the matter carefully and fully before the trial court. This alone should be sufficient proof of the denial of the parents' right to a fair trial, which is not only to their detriment but also potentially to the children's detriment.

¶ 5 Accordingly, I would hold the parents did not receive a fair trial based on this issue and were denied adequate protection of their fundamental rights. I would reverse and remand for a new trial.