OSCN Found Document:CLABAUGH v. GRANT

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 CLABAUGH v. GRANT
2015 OK CIV APP 33
347 P.3d 1044
Case Number: 111292
Decided: 06/20/2014
Mandate Issued: 04/15/2015
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2015 OK CIV APP 33, 347 P.3d 1044

 

JUNE CLABAUGH, Plaintiff/Appellee,
v.
JERRY GRANT, 
Defendant/Third-Party Plaintiff/Appellant,
v.
FIRST AMERICAN BANK & 
TRUST, Third-Party Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
McCLAIN COUNTY, 
OKLAHOMA
HONORABLE TOM A. LUCAS, JUDGE

AFFIRMED IN PART; REVERSED IN PART

Jack Tracy, Purcell, Oklahoma, for Plaintiff/Appellee,
Randall K. Calvert, 
Rabindranath Ramana, Denielle Williams, CALVERT LAW FIRM, Oklahoma City, 
Oklahoma, for Defendant/Third-Party Plaintiff/Appellant,
Chris Condren, Kari 
Y. Hawkins, PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P., Oklahoma 
City, Oklahoma,for Third-Party Defendant/Appellee.


ROBERT D. BELL, PRESIDING JUDGE:
¶1 Defendant/Third-Party Plaintiff/Appellant, Jerry Grant, appeals from the 
trial court's judgment rendered on a jury verdict in favor of 
Plaintiff/Appellee, June Clabaugh, in this action for conversion and fraud. For 
the reasons set forth below, we affirm in part and reverse in part.
¶2 On January 27, 2005, Plaintiff entered into a rental agreement for a 
safety deposit box with Third-Party Defendant/Appellee, First American Bank 
& Trust (Bank). Plaintiff and her daughter, Alicia Nelson, placed in safety 
deposit box #267 her deceased father's large coin collection, along with a 
variety of jewelry and other family heirlooms. Included in the box was an old 
prescription bottle filled with coins. The bottle's prescription label from 
Turner's Pharmacy in Purcell bore the name "Ar. Jones." Plaintiff's deceased 
mother's name was Artibus Jones. Plaintiff testified the five inch by five inch 
safety deposit box was completely full and weighed between 30 and 40 pounds. 
Plaintiff timely paid her rent on the box every year thereafter and did not seek 
to reenter the box until 2010. Trial testimony from Plaintiff's expert witness 
placed the value of the coin collection at between one and two million 
dollars.
¶3 In April 2008, Bank accidentally expunged Plaintiff's safety deposit 
records from its computer system (although a Bank officer later conceded there 
were other records available to identify the owner of box #267). Purportedly 
believing it was holding an abandoned safety deposit box, Bank employees opened 
and physically examined the contents of box #267 in the fall of 2009 in an 
effort to identify the owner. The only item in the box that contained any 
distinguishing information was the prescription pill bottle with the name "Ar. 
Jones."
¶4 When Bank discovered records indicating an "Arley Jones" was a former 
account holder, it sought to determine whether that Arley Jones was the same 
person as the "Ar. Jones" listed on the pill bottle. Bank records revealed Arley 
Jones' account had been closed years earlier by Defendant, his nephew. Bank 
contacted Defendant, who confirmed he was the personal representative of Arley 
Jones' estate. Testimony conflicted as to whether Defendant informed Bank he had 
been discharged as the personal representative of his uncle's estate in late 
2006. At Bank's request, Defendant produced the Letters of Administration 
appointing him as the estate's personal representative in May 2006. On October 
29, 2009, Bank drafted and had Defendant execute a hold harmless agreement. 
Defendant signed the document as "Personal Representative" of the estate of 
Arley Austin Jones. Bank thereafter delivered the contents of Plaintiff's safety 
deposit box to Defendant, who claims he sold most of the contents to a coin 
dealer a few days later for $488.00. Defendant admitted he was not the heir of 
his uncle's estate, he did not have approval from the sole heir to sell the 
property, and he did not contact the sole heir to disclose the transaction or 
remit to her the $488.00.
¶5 When Plaintiff's daughter sought access to her safety deposit box the 
following year, Bank revealed it had mistakenly released the contents to an 
unnamed man. Bank contacted Defendant, who disclosed he had disposed of the box 
contents. Plaintiff then sued Bank and several "Doe" defendants for conversion, 
gross negligence, fraud and emotional distress. She later substituted Defendant 
as "Doe #1" after learning his identity. Defendant filed a counter-claim against 
Plaintiff for defamation (later abandoned) and a cross-claim against Bank for 
negligence and malfeasance. Plaintiff dismissed her claims against Bank after 
entering into a confidential settlement agreement. The pre-trial order listed 
Plaintiff's causes of action against Defendant as fraud, conversion and punitive 
damages. Defendant's claim against Bank was listed as negligence. Bank's 
pre-trial motion for summary judgment was overruled.
¶6 A jury trial was conducted from April 30 to May 3, 2012. At the close of 
evidence, Bank moved for a directed verdict/motion to dismiss Defendant's 
cross-claim. The trial court granted the motion, finding Bank owed no duty to 
Defendant. Plaintiff's claims against Defendant were submitted to the jury, 
which returned a verdict finding:

 
 1. By a preponderance of the evidence, Defendant "converted some or all 
 of Plaintiff's property to his own use";
 2. By clear and convincing evidence, Defendant "committed fraud against" 
 Plaintiff; and
 3. By clear and convincing evidence, Defendant "acted in reckless 
 disregard of the rights of" Plaintiff.
The jury awarded Plaintiff $1,250,000.00 in actual damages and, after a 
separate proceeding, $125,000.00 in punitive damages. The trial judge entered 
judgment to that effect. Defendant's motions for judgment notwithstanding the 
verdict, new trial and for an offset of the Bank settlement proceeds were 
denied. From said judgment, Defendant appeals.[1]
¶7 We first address Defendant's claim that the trial court erroneously 
dismissed his negligence cross-claim against Bank. The elements of negligence 
are "(1) the existence of a duty on part of defendant to protect plaintiff from 
injury; (2) a violation of that duty; and (3) injury proximately resulting 
therefrom." Brigance v. Velvet Dove Restaurant, Inc., 1986 OK 41, ¶7, 725 P.2d 300. Under this standard, 
we must initially decide the threshold question of whether Bank owed a duty to 
protect Defendant from injury, because there can be no actionable negligence in 
the absence of a duty. Iglehart v. Board of County Comm'rs of Rogers 
County, 2002 OK 76, ¶10, 60 P.3d 497; Nicholson v. 
Tacker, 1973 OK 75, ¶11, 512 P.2d 156. "Just because the 
defendant has created a risk which harmed the plaintiff that does not mean that, 
in the absence of some duty to the plaintiff, the defendant will be held 
liable." Id. "The question of whether a duty is owed by a defendant is 
one of law; . . ." Iglehart at ¶11.
¶8 Bank argued at trial it owed no duty to Defendant because he was not a 
customer. However, as Defendant correctly notes, "liability in negligence is not 
necessarily dependent upon a pre-existing privity in legal relationship between 
the person injured and the person causing the injury." Independent-Eastern 
Torpedo Co. v. Price, 1953 OK 
74, ¶42, 258 P.2d 189. As the 
Iglehart Court detailed:

 
 We recognize the traditional common-law rule that whenever one person is 
 by circumstances placed in such a position with regard to another, that, if 
 he (she) did not use ordinary care and skill in his (her) own conduct, he 
 would cause danger of injury to the person or property of the other, a duty 
 arises to use ordinary care and skill to avoid such danger. Among a number 
 of factors used to determine the existence of a duty of care, the most 
 important consideration is foreseeability. Generally a "defendant owes a 
 duty of care to all persons who are foreseeably endangered by his conduct 
 with respect to all risks which make the conduct unreasonably dangerous." 
 Foreseeability establishes a "zone of risk," which is to say that it forms a 
 basis for assessing whether the conduct "creates a generalized and 
 foreseeable risk of harming others."
Iglehart, 2002 OK 76 
at ¶10 (emphasis and footnotes omitted). See also Union Bank of Tucson, Ariz. 
v. Griffin, 1989 OK 47, ¶13, 
771 P.2d 219, which held, "The 
law imposes upon a person engaged in the prosecution of any work an obligation 
to use ordinary care to perform it in such a manner as not to endanger the 
property of others."
¶9 In the present case, Defendant argues Bank had a duty to exercise ordinary 
care in dealing with him and Bank breached that duty. Specifically, Defendant 
asserts it was reasonably foreseeable Plaintiff would some day return to Bank to 
claim her property after Defendant had disposed of it, Plaintiff would then sue 
Defendant, and Defendant would incur damages as a result. Defendant also 
contends his injury was caused predominantly by Bank's negligent acts - losing 
records, extrapolating from a name on a pill bottle that Arley Jones owned the 
property at issue, and misdelivering Plaintiff's property - and not by his later 
disposition of the property. In any event, Defendant urges the issue of whether 
his act of selling the coins constituted a foreseeable supervening event is a 
fact question for a jury.
¶10 As the Iglehart Court specifically noted, duty "is not sacrosanct 
in itself, but only an expression of the sum total of those considerations of 
policy which lead the law to say that the particular plaintiff is entitled to 
protection." Id., 2002 OK 
76 at ¶10, n.17, quoting Prosser, Law on Torts, pp. 332-3 (3d ed. 
1964) and Tarasoff v. Regents of Univ. of Cal., 551 P.2d 334, 342 (Cal. 
1976). The instant record reveals Defendant obtained the safety deposit box 
contents, not in his individual capacity, but as the personal representative 
of his uncle's estate. In fact, Defendant had been discharged as personal 
representative on December 29, 2006, and thereafter had no lawful right to act 
on behalf of his uncle's estate. The court order discharging Defendant as 
personal representative also specifically stated that all after-discovered 
property belonging to his uncle is exclusively vested in the uncle's sole heir. 
Regardless of Defendant's claims that he later attempted to locate the sole heir 
so he could give her the sale proceeds, Defendant had no authority to 
obtain the subject property nor sell the same.
¶11 In White v. Shawnee Mill Co., 1923 OK 1057, 221 P. 1029, 1031, the Court 
held:

 
 The rule is well settled that, if a party suffers injury while violating 
 a public law, the other party being also a transgressor, he cannot recover 
 for the injury if the unlawful act was the cause of the 
 injury.
White, 1923 OK 1057 at 
¶3 (citations omitted). Accord Panther v. McKnight, 1926 OK 937, ¶8, 256 P. 916. This rule is akin to the 
in pari delicto doctrine, "[t]he principle that a plaintiff who has 
participated in wrongdoing may not recover damages resulting from the 
wrongdoing." Black's Law Dictionary 806 (8th ed. 2004). See also Bowlan v. 
Lunsford, 1936 OK 158, ¶13, 
54 P.2d 666 (party to illegal act 
may not take advantage of party in pari delicto for damages sustained 
thereby).
¶12 Bank was arguably negligent vis-a-vis Defendant in transferring 
Plaintiff's property to him without conducting more thorough due diligence. 
However, Defendant took possession of the property and disposed of it without 
any legal authority to do so. Under these circumstances and in light of the 
above stated principles of law, we cannot say Defendant is entitled to 
protection from Bank's acts. Thus, we hold the trial court did not err in 
holding Bank owed no legally protected duty to Defendant. The dismissal of 
Defendant's cross-claim is therefore affirmed.
¶13 We next find merit in Defendant's proposition that he is entitled to 
judgment notwithstanding the verdict on Plaintiff's fraud claim.

 
 The standard for determining a motion for judgment notwithstanding the 
 verdict (JNOV) is identical to the standard for determining a motion for 
 directed verdict. We review a trial court's ruling on a motion for JNOV by 
 the same standard used by the trial court. We consider as true all evidence 
 favorable to the non-moving party together with all inferences that may be 
 reasonably drawn therefrom, and we disregard all conflicting evidence 
 favorable to the moving party. A motion for JNOV should not be granted 
 unless there is an entire absence of proof on a material 
 issue.
First Nat. Bank in Durant v. Honey Creek Entm't Corp., 2002 OK 11, ¶8, 54 P.3d 100 (citations 
omitted).
¶14 The elements of actionable fraud are:

 
 1) a false material misrepresentation, 2) made as a positive assertion 
 which is either known to be false or is made recklessly without knowledge of 
 the truth, 3) with the intention that it be acted upon, and 4) which is 
 relied on by the other party to his (or her) own 
detriment.
Bowman v. Presley, 2009 OK 
48, ¶13, 212 P.3d 1210. For 
purposes of the instant JNOV, we must consider as true Plaintiff's allegations 
that Defendant intentionally or recklessly led Bank to believe he was still the 
personal representative of his uncle's estate when he obtained Plaintiff's 
property and he did so with the intention that Bank act upon such belief. 
However, the record is devoid of any allegation or evidence Plaintiff 
relied upon Defendant's alleged deceit to her own detriment.[2] Defendant made no 
representations whatsoever to Plaintiff and Plaintiff knew nothing of 
Defendant's representations to Bank at the time her property was 
misappropriated. Plaintiff did not and cannot prove Defendant committed any act 
of fraud against her. The trial court's decision overruling Defendant's 
fraud JNOV is reversed.
¶15 Defendant also contends the trial court erred in overruling his JNOV 
motion regarding Plaintiff's conversion claim. Conversion is defined as "any act 
of dominion wrongfully exerted over another's personal property in denial of or 
inconsistent with his rights therein." Welty v. Martinaire of Okla., 
Inc., 1994 OK 10, ¶6, 867 P.2d 1273. As stated above, in 
reviewing a JNOV motion this Court must consider as true all evidence favorable 
to Plaintiff and disregard all Defendant's conflicting evidence. Honey 
Creek, 2002 OK 11 at ¶8. 
Applying these rules to the instant case, this Court must take as true the coin 
collection in Plaintiff's safety deposit box had a value of between one and two 
million dollars. We must also consider as true all of Plaintiff's evidence that 
indicated Defendant wrongfully exerted control over Plaintiff's property. 
Conversely, we are required to disregard, among other things, Defendant's claims 
that he received only $488.00 for the sale of Plaintiff's property. Under these 
circumstances, we hold the trial court properly denied Defendant's conversion 
JNOV motion.
¶16 In reaching the above conclusion, we specifically reject Defendant's 
arguments that (1) Plaintiff was required to prove which particular items 
Defendant received from Bank and (2) Defendant was merely an innocent bailee or 
discoverer of lost property. With respect to the items of property received by 
Defendant, Bank's officer testified it delivered all of the contents of 
safety deposit box #267 to Defendant. Plaintiff, her daughter and her cousin all 
testified as to the extensive coin collection inherited by Plaintiff, and 
Plaintiff and her daughter testified regarding the coins, jewelry and other 
valuables they placed in the safety deposit box. Plaintiff's expert testified 
regarding the value of the coin collection. The issues of what items Defendant 
received and the value of those items were properly submitted to the jury for 
their determination.
¶17 We reject Defendant's second argument outright. Defendant was not an 
innocent bailee or discoverer of lost property. Plaintiff's property was never 
lost. Defendant took possession of Plaintiff's property from Bank in his 
purported capacity as personal representative of his uncle's estate at a time 
when he had no lawful authority to do so. Viewing the evidence in the light most 
favorable to Plaintiff, the jury could properly conclude Defendant then 
converted such property to his own use and in denial of Plaintiff's rights 
therein.
¶18 Defendant next maintains he is entitled to a new trial because the jury 
was improperly instructed regarding Plaintiff's conversion claim. We disagree. 
First, we note Defendant did not object to the instructions given by the trial 
court. "As a general rule, a party who makes no objection to the instructions of 
the court to the jury waives any error therein." In re A.A.C.P., 2006 OK CIV APP 32, ¶22, 132 P.3d 644, citing Hawkins v. 
McElhanon, 1957 OK 187, ¶2, 
315 P.2d 667. Under such 
circumstances, this Court will review only for fundamental error appearing on 
the face of the instructions. Sullivan v. Forty-Second West Corp., 1998 OK 48, ¶9, 961 P.2d 801.
¶19 "[A]n affirmative duty is placed upon the trial court to give 
instructions which accurately reflect the law regarding the issues presented." 
Id. at ¶12 (quotation omitted).

 
 In reviewing the propriety of given instructions, the instructions are to 
 be viewed in whole rather than separately. And, where it appears that 
 instructions taken as a whole do not establish that the jury was misled or 
 that complaining parties' rights were prejudiced, the verdict will not be 
 set aside. Instructions are sufficient when, considered as a whole, they 
 present the law that is applicable to the issues.
CNA Ins. Co. v. Krueger, Inc., of Tulsa, 1997 OK 142, ¶15, 949 P.2d 676, 679 (citation 
omitted).
¶20 We have examined the face of the jury instructions in the present case 
and find no erroneous statement of fundamental law. The jury was adequately 
instructed regarding Plaintiff's conversion claim.[3] Accordingly, this proposition of error 
is rejected.
¶21 Next, Defendant claims the jury's award is excessive, not supported by 
the evidence and warrants a remittitur. Initially, we note it is impossible to 
attribute the jury's compensatory damage award to either Plaintiff's fraud 
claim, which is herein reversed, or her conversion claim. However, it is clear 
both causes of action sought a singular damage award for Defendant's 
misappropriation of Plaintiff's property. The jury's punitive damages award was 
based upon Defendant's reckless disregard for Plaintiff's rights, see 23 O.S. 2011 §9.1; OUJI No. 5.6, via 
his unauthorized taking and disposal of Plaintiff's property. Thus, under the 
facts of this case, we hold the damage award is unaffected by the reversal of 
Plaintiff's fraud verdict.
¶22 In Currens v. Hampton, 1997 OK 58, 939 P.2d 1138, the Court 
reiterated:

 
 We have traditionally held that an appellate court has no right to place 
 a limitation on the amount of a jury verdict unless it is convinced that the 
 amount bears no relation whatsoever to the evidence. The established rule is 
 that before a verdict of a jury may be set aside as excessive, it must 
 appear that the verdict is so excessive as to strike mankind, at first 
 blush, as being beyond all measure unreasonable and outrageous, showing the 
 jury to have been actuated by passion, partiality, prejudice or corruption. 
 . . . An appellate court may not substitute its judgment for that of the 
 jury in its exercise as a fact-finding body; it must consider the evidence 
 most favorable to the plaintiffs as establishing the facts concerning the 
 excessiveness of the verdict.
Currens, 1997 OK 58 at 
¶10 (citations omitted).
¶23 Upon review of the instant record, we cannot say the jury's award is 
excessive. Considering the evidence in the light most favorable to Plaintiff, 
Defendant unlawfully absconded with between a one and two million dollar coin 
collection, jewelry and other heirlooms. Plaintiff's evidence established the 
coin collection contained approximately 55 vintage, solid gold Double Eagle 
($20.00) gold pieces, a number of extremely rare three-legged Buffalo nickels, 
hundreds of Morgan silver dollars (approximately 30 to 40 pounds of solid 
silver) and various other collectible coins. She testified the family heirlooms 
included two gold wedding rings and a pair of diamond earrings. Plaintiff's 
expert testified $488.00 would only buy ten ounces of junk silver. Because the 
evidence tends to support the jury's award, its verdict must be upheld.
¶24 Finally, we address Defendant's assertion that the jury's award should be 
reduced by the amount of Plaintiff's settlement with Bank. Defendant's argument 
is based upon the common law "one satisfaction" rule designed to prevent a 
plaintiff from gaining double recovery. See Kirkpatrick v. Chrysler 
Corp., 1996 OK 136, ¶¶12-13, 
920 P.2d 122. However, 12 O.S. 2011 §832(C) states "[t]here 
is no right of contribution in favor of any tort-feasor who has intentionally 
caused or contributed to [the plaintiff's] injury . . . ." In the present case, 
Defendant intentionally converted Plaintiff's property to his own use. He is not 
entitled to any set-off based upon Bank's settlement with Plaintiff. The 
judgment of the trial court is affirmed in part and reversed in part.

¶25 AFFIRMED IN PART; REVERSED IN PART.

MITCHELL, J., and GOREE, J., concur.

FOOTNOTES

[1] During 
the pendency of this appeal, Defendant filed with this Court a Motion for 
Expedited Ruling seeking an appellate decision before Defendant's real property 
was sold at sheriff's sale. Said motion was rendered moot by the trial court's 
issuance of a stay of execution proceedings on January 17, 2014.

[2] The 
trial court did not submit OUJI No. 18.1 to the jury. The instructions given by 
the court did not contain any requirement that Plaintiff must have detrimentally 
relied on Defendant's misrepresentations.

[3] Having 
already decided Plaintiff's fraud verdict against Defendant must be overturned, 
we need not determine whether the trial court's fraud instructions were 
sufficient.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2006 OK CIV APP 32, 132 P.3d 644, In the Matter of A.A.C.P.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 41, 725 P.2d 300, 57 OBJ 1698, Brigance v. Velvet Dove Restaurant, Inc.
Discussed
 1989 OK 47, 771 P.2d 219, 60 OBJ 813, Union Bank of Tucson, Arizona v. Griffin
Discussed
 1994 OK 10, 867 P.2d 1273, 65 OBJ 457, Welty v. Martinaire of Oklahoma, Inc.
Discussed
 1997 OK 58, 939 P.2d 1138, 68 OBJ 1645, Currens v. Hampton
Discussed at Length
 1953 OK 74, 258 P.2d 189, 208 Okla 633, INDEPENDENT-EASTERN TORPEDO CO. v. PRICE
Discussed
 1936 OK 158, 54 P.2d 666, 176 Okla. 115, BOWLAN v. LUNSFORD
Discussed
 1957 OK 187, 315 P.2d 667, HAWKINS v. McELHANON
Discussed
 2002 OK 11, 54 P.3d 100, 73 OBJ 560, FIRST NATIONAL BANK IN DURANT v. HONEY CREEK ENTERTAINMENT CORP.
Discussed at Length
 1923 OK 1057, 221 P. 1029, 94 Okla. 260, WHITE v. SHAWNEE MILLING CO.
Discussed at Length
 1973 OK 75, 512 P.2d 156, NICHOLSON v. TACKER
Discussed
 2002 OK 76, 60 P.3d 497, IGLEHART v. BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY
Discussed at Length
 2009 OK 48, 212 P.3d 1210, BOWMAN v. PRESLEY
Discussed
 1996 OK 136, 920 P.2d 122, 67 OBJ 2065, Kirkpatrick v. Chrysler Corp.
Discussed
 1997 OK 142, 949 P.2d 676, 68 OBJ 3827, CNA INSURANCE CO. v. KRUEGER, INC.
Discussed
 1926 OK 937, 256 P. 916, 125 Okla. 134, PANTHER v. McKNIGHT
Discussed
 1998 OK 48, 961 P.2d 801, 69 OBJ 2135, SULLIVAN v. FORTY SECOND WEST CORP.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 832, Joint Tort-Feasors - Contribution - Indemnity - Exemptions
Cited
Title 23. Damages
 Cite
Name
Level

 23 O.S. 9.1, Damages for Sake of Example and Punishment of Defendant - Punitive Damages Awards by Jury
Cited